# Loughlin, Appellant, v. Pennsylvania Railroad Company.

*Negligence—Railroads—Signal torpedoes—Young children—Explosion—Proximate cause—Case for jury.*

In an action to recover damages for injuries to a child nine years of age, caused by the explosion of a railroad torpedo used for signalling trains, it appeared that two torpedoes were found by children lying loose on the rails of defendant railroad, which at that point were laid in a public street; that such torpedoes were used by defendant at that place to warn trains in foggy weather, and that they were carried away by the children and one exploded while one of the children was trying to open it, causing the injury complained of. *Held,* the questions of defendant's negligence, and the proximate cause of the injury were for the jury, and a judgment of nonsuit was improper.

Mr. Justice Brown dissents.

Argued Jan. 21, 1913. Appeal, No. 258, Jan. T., 1912, by plaintiffs, from judgment of C. P. No. 3, Philadelphia Co., March T., 1906, No. 559, refusing to take off nonsuit in case of Theresa Loughlin, by her next friend and father John L. Loughlin, and John L. Loughlin in his own right, v. Pennsylvania Railroad Company. Before Fell, C. J., Brown, Mestrezat, Potter and Moschzisker, JJ. Reversed.

Trespass to recover damages for personal injuries. Before Davis, J.

The opinion of the Supreme Court states the facts.

The court entered a nonsuit which it subsequently refused to take off.  Plaintiff appealed.

*Error assigned* was the refusal to take off the nonsuit.

*Eugene C. Bonniwell,* with him *John J. Green,* for appellant.—The defendant was bound to anticipate that these boxes lying unguarded on its tracks on a public highway might be found by children and that they might play with them and perhaps explode them: Rachmel v. Clark, 205 Pa. 314; Duffy v. Sable Iron Works, 210 Pa. 326.

The placing of these caps on a public highway was the proximate cause of plaintiff's injuries: Scott v. Ry. Co., 172 Pa. 646; Hoag v. Railroad Co., 85 Pa. 293; South-Side Pass. Ry. Co. v. Trich, 117 Pa. 390; Yoders v. Amwell Twp., 172 Pa. 447; Harriman v. Ry. Co., 45 Ohio 11 (12 N. E. Repr. 451) ; Finkbeiner v. Solomon, 225 Pa. 333.

*Edwin Jaquett Sellers,* of *Sellers & Rhoads,* for appellee.—The evidence fails to show that it was negligence per se for defendant to have used torpedo caps, that the latter were of improper character, were negligently placed on the rails, or that they were used in a manner contrary to the regulations of defendant.

If an adult had picked up the torpedo, of course, it would have been a trespass.  Plaintiff's child could not be guilty of contributory negligence yet it has no superior rights for injuries arising from its trespasses: Marsh v. Giles, 211 Pa. 17; Finkbeiner v. Solomon, 225 Pa. 333; Carpenter v. Miller, 232 Pa. 362.

OPINION BY MR. JUSTICE POTTER, March 31, 1913 :

This is an appeal from the refusal of the trial court to take off a judgment of compulsory nonsuit.  From the testimony of the plaintiffs, it appears that on Sunday

afternoon, March 12, 1905, Theresa Loughlin, a child nine years of age was with some companions walking down Lehigh avenue, where the defendant, the Pennsylvania Railroad Company, maintains along and upon the public street a railroad track over which it operates freight trains. Two young boys of the party picked up from the railroad track in the street two torpedoes which had not been exploded, and carried them away. These torpedoes are described in appellant's history of the case as being tin boxes cylindrical in shape and about the size of a silver half dollar. They are used by railroad employees to give warning of a train ahead on the track, being placed on the rail so as to explode when the engine of the train following passes over them. It appears that the children took the torpedoes to the home of plaintiff's uncle not knowing what they were or that they were dangerous. They tried without success to open the boxes with a knife. They were then taken by the children into the yard, and one of them attempted to open one of the boxes with a hatchet. The torpedo exploded and injured several of the children who were standing near by. Plaintiff was struck in the face by the fragments, and one of her eyes was seriously injured. The present action was brought in her behalf by her father as next friend, and in his own right, to recover damages for her injuries which are alleged to have been the result of the negligence of the employees of the defendant company in leaving the torpedoes upon the railroad track in a public street. At the close of the plaintiff's evidence, the trial judge entered judgment of compulsory nonsuit, and afterwards the court in banc refused to take the judgment off. Plaintiffs have appealed.

From his opinion it appears that the trial judge entered the nonsuit on the ground, first, that no negligence was shown on the part of the defendant company. We think, however, that as to this question the evidence was sufficient to take the case to the jury. The railroad

track at the point in question was not located upon a private right of way, but occupied a public street of the city, where pedestrians and vehicles had equal rights with the railroad company. The jury might fairly have reached the conclusion that it was negligence to leave in this public thoroughfare, without guard or warning, articles such as these torpedoes, which might be dangerous if picked up by children and carelessly handled. One of the witnesses for plaintiff, who had been employed by the defendant company as a brakeman on trains running along Lehigh avenue where the torpedoes were found by the children, testified that such torpedoes were used by the defendant company at that place as signals in foggy or misty weather to warn approaching trains of the proximity of a train in advance. It appears from the evidence that one of the torpedoes in question was found on top of the rail, but was not attached to it in any way when it was picked up. The evidence as to the purpose of these torpedoes and the use which was made of them by the defendant company, taken in connection with the fact that one of them at least was on top of the rail in the position where the employees were required to place them, although it was not fastened to the rail as it should have been, was, we think, sufficient to take the case to the jury upon the question of whether or not the torpedoes were left by the defendant's servants in the place where they were found. The jury might very well have found that it was negligence to leave these torpedoes without guard or warning in a public street where many children were passing up and down on Sunday afternoon. The danger might have been avoided by stationing a flagman there to give warning of approaching trains, and it appears from the evidence that this practice has since been adopted. The trial judge was, however, of opinion that even if the facts alleged could be held to constitute negligence, it was not the direct or proximate cause of the injury of which complaint is made.

In Burrell Township v. Uncapher, 117 Pa. 353, Mr. Justice GREEN, quoting from Shearman & Redfield on Negligence, Section 10, said (p. 363): "Negligence, however, may be the proximate cause of an injury of which it is not the sole or immediate cause. If the defendant's negligence concurred with some other event (other than the plaintiff's fault) to produce the plaintiff's injury, so that it clearly appears that but for such negligence the injury would not have happened, and both circumstances are closely connected with the injury in the order of events, the defendant is responsible, even though his negligent act was not the nearest cause in the order of time." In Wood v. Penna. R. R. Co., 177 Pa. 306, Mr. Justice DEAN, quoting from Cooley on Torts, 69, said (p. 310): "If the original act was wrongful, and would, naturally, according to the ordinary course of events, prove injurious to some others, and result, and does actually result, in injury, through the intervention of other causes not wrongful, the injury shall be referred to the wrongful cause, passing through those which were innocent." In 1 Thompson on Negligence, Section 133, it is said: "Nuisances which, from their very nature, attract children of tender years to their death or injury, are the proximate causes of such injuries,—such as torpedoes negligently left by the servants of a railway company at a place where children are in the habit of passing." Citing Harriman v. Railway Co., 45 Ohio 11. In Finkbeiner v. Solomon, 225 Pa. 333, the decision of this court was based upon the fact that in that case the dynamite caps were not placed where there was reason to apprehend that they would be found by children. As the trial judge said, they were placed where they were unlikely to be discovered, in a dark place upon a beam in a barn. While we there agreed with the conclusion of the trial judge, we said that the facts of the case brought it close to the line, and added, "if defendant had thrown the caps out, loosely, where children were likely to play, and would be apt to find

them, the case would have been very different." The present case presents just the distinction noted. Here the dynamite caps were left by the employees of the defendant company in the public highway, where hundreds of children were accustomed to pass and repass, and that they would find and be tempted to make use of the caps, as curious and attractive playthings, might reasonably have been anticipated. "Children, wherever they go, must be expected to act upon childish instincts and impulses, and others who are chargeable with a duty of care and caution toward them must calculate upon this, and take precautions accordingly:" Chief Justice COOLEY in Power v. Harlaw, 57 Mich. 107. It seems to us that the connection was natural between the act of leaving the dynamite caps upon the street and the injurious consequences which followed from their being found by the children, and shortly afterwards exploded by them through ignorance of their dangerous character. The result of the negligent act was not remote or unnatural, but was one which might reasonably have been anticipated, and the duty of guarding against any such result from the use of the dynamite caps, therefore arose.

The second assignment of error is sustained, and the judgment of compulsory nonsuit is reversed, with a procedendo.

BROWN, J., dissents.