Whitner, Appellant, *v.* Lojeski.

450

Argued January 21, 1969. Before Jones, Cohen, Eagen, O'Brien, Roberts and Pomeroy, JJ.

*George M. Bush,* with him *Hartzel and Bush,* for appellant.

*James C. Bowen,* with him *Victor S. Jaczun,* and *Power, Bowen & Valimont,* for appellee.

*Norvin Nathan,* for plaintiff-appellee.

OPINION BY MR. JUSTICE POMEROY, March 25, 1970:

At approximately nine o'clock in the evening on April 9, 1962, an automobile owned and operated by Louis Whitner (appellant herein) was struck from behind by a second car driven by Stanley Lojeski. The impact occurred between the right front of the Lojeski vehicle and the left rear of the Whitner automobile. At the time of the accident, both cars were traveling south on Route 309, a three-lane highway in Bucks County. The car driven by Lojeski was owned by Margaret Von Hintz, and Gerald Evans was a passenger in the right front seat of the Lojeski automobile.

As a result of the accident, two suits in trespass were filed. Whitner filed suit against Lojeski and Von Hintz seeking damages for personal injuries, loss of earnings, and property damage. Evans brought suit against Whitner and Lojeski claiming damages for personal injuries and loss of income; following Evans' death in January, 1965, his wife, as administratrix of his estate, was substituted as plaintiff and continued to prosecute the action. The two actions were consolidated and jointly tried in the Common Pleas Court of Bucks County. In the Whitner suit, the court entered an involuntary nonsuit in favor of Von Hintz upon her motion, and the jury returned a verdict against Whitner and in favor of the remaining defendant Lojeski. In the Evans suit the jury returned a verdict of $12,000 in favor of the Evans estate and against Whitner and in favor of Lojeski. Lojeski thus was relieved of liability in both cases. Both Whitner and Evans filed motions for new trial; both motions were denied after argument. The appeals now before us

were taken by Whitner from the judgments subsequently entered on the verdicts.

The issues presented by these appeals are the validity of the lower court's charge to the jury on proximate and superseding cause. Resolution of these questions requires some review of the trial testimony.

At trial, the principal parties offered accounts of the events leading up to the accident which differed markedly in many particulars. Whitner, according to his account, had hoped to visit a gun shop located on the west side of Route 309 on the evening of the accident. Uncertain whether the store was open, Whitner drove north on Route 309, passing the shop on his left across the highway. Discovering that it was still open, he drove some two-tenths of a mile further north and there pulled off the road onto the shoulder opposite a motel. He checked for traffic, noticed a car roughly one mile away coming south toward him, and realizing he had ample time, he executed a U-turn. He then drove south until he again approached the shop in question, which was now on his right. Intending to stop but uncertain as to where he should park, Whitner slowed down and eased his car off the highway. When he was almost entirely on the berm at the side of the road, and while he was still attempting to decide where he would park, Whitner's car, according to his testimony, was struck from behind; the force of the collision caused it to roll over until it came to rest against a pole in front of the gun shop. Whitner estimated that at the time of the accident his car was roughly 90% on the berm of the road, although he acknowledged that his left rear wheel might still have been on the paved highway surface.

Lojeski's version of the accident as told at trial was as follows: Immediately before the accident, he was driving south on Route 309 at a speed of 45 to 50 miles per hour. Suddenly, the Whitner vehicle, which had

been proceeding north on Route 309, executed a U-turn in front of his own car. Lojeski was not aware of the Whitner car until it passed in front of him at an angle roughly one car length away, and he was unable to avoid the collision because of the suddenness of Whitner's turn. Lojeski's version of the accident was confirmed in substance by Evans in a deposition taken before his death, parts of which were read into evidence at trial, and by Walter Gilliam, a second passenger in the Lojeski car who escaped the accident without injury, although both men's accounts differed from Lojeski's in several particulars, not of relevance here.

Given this marked conflict in testimony, the jury was obliged to assess the credibility of the witnesses and decide upon the sequence of events which it deemed authoritative; its further task was to determine the incidence of liability in accordance with the instructions of the court and in light of their prior factual determination.

The trial court in its charge explained to the jury the nature of the two suits and the reasons for their consolidation. He reviewed the evidence, defined negligence, and instructed the jury that the plaintiff was obliged to establish not only that a defendant was negligent but also that such negligence was the proximate cause of plaintiff's injury.

It is appellant's principal contention that the court's use of the so-called "but for" test in its definition of proximate cause[1] was erroneous and that such

---

[1] On the issue of proximate cause, the trial court's instruction was as follows:

"Now, it is not only necessary that the plaintiff establish that the defendants were guilty of negligence, but the plaintiff must also establish that that negligence was the proximate cause of the accident. Negligence alone and of itself does not create liability. The defendant's negligence must be the proximate or efficient legal cause of the injury complained of. The term 'proxi-

error was prejudicial, for even if the jury had accepted appellant's version of the accident, they might nevertheless have found against him because of their misapprehension of the law.

As in all cases questioning the accuracy of a charge to the jury, we must not take the challenged words or passage out of the context of the whole charge, but must look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial to the complaining party. *Wilson v. Penna. Railroad Co.*, 421 Pa. 419, 422, 219 A. 2d 666 (1966); *James v. Ferguson*, 401 Pa. 92, 97, 162 A. 2d 690 (1960). So viewing the charge in the case at bar, we conclude there was no prejudicial error.

It is elementary that the liability of a defendant for injury or damages to another is predicated upon a connection between his negligent acts or omissions and the injuries sustained. That requisite connection is

niate cause' would mean that cause without the happening of which the injury or accident would not have occurred.

"Proximate cause has been defined as that which, in a continuous sequence of events, unbroken by any new or independent cause, produces the injury and without which it would not have occurred. Thus, if the negligence complained of is not a substantial factor in bringing about the injury to the plaintiff it is not the proximate cause of the injury.

"Also use what we might call the 'but-for-rule' and that is: Would the accident have happened but for the negligence of the defendant? In other words, if the accident would not have occurred without the negligence of the defendant, then if the defendant was negligent and the accident took place, that would be the proximate cause."

At a later point the court summarized: "The Gerald Evans Estate would be entitled to a verdict only against such person who was negligent and whose negligence was the proximate cause of the accident, that is, whose negligence was a substantial factor in bringing about the accident."

most commonly called "proximate cause",[2] and few aspects of the law have proved more perplexing to the courts or provided greater employment to the commentators than the proper definition of this phrase.[3]

One could wish that the pronouncements of this Court on the subject over the years had been somewhat more lucid, more consistent, more forthright; had distinguished between cause in a factual or "philosophic" sense[4] and proximate or legal cause; had acknowledged that the concept, like that of negligence itself, was designed not only to permit recovery for a wrong, but to place such limits upon liability as are deemed socially or economically desirable from time to time. Perhaps in so doing, one could have eliminated proximate cause as a separate concept, and accomplished the private and public purposes of this aspect of tort law by a definition of negligence which would combine the concept of legal cause with the foreseeability by the defendant (judged as a "reasonable man") of the risk of harm created by his conduct. The issue of factual cause would be for separate determination by the trier of fact.

Be that as it may, we have a considerable body of law on the subject in Pennsylvania which cannot be ig-

---

[2] As various authorities have observed, the phrase "legal cause" may be preferable to "proximate cause", although the latter expression is most generally used "and it is pretty well understood what is meant." MAGRUDER, C. J., in *Marshall v. Nugent*, 222 F. 2d 604, 610 (1st Cir. 1955); *Restatement (Second) of Torts*, §431 (1965).

[3] See comment by FLOOD, J., writing for the Superior Court in *Smith v. Philadelphia Trans. Co.*, 202 Pa. Superior Ct. 278, 281, 195 A. 2d 168 (1963), citing Keeton, *Legal Cause in the Law of Torts* (1963); 2 Harper and James, *The Law of Torts*, Chap. XX, and bibliographical listing in §20.1, footnote 4, p. 1109.

[4] See *Restatement, supra*, §431, comment a; Prosser, *Law of Torts*, chap. 7 (3d ed. 1964); and Harper and James, *op. cit.*, §§20.2 and 20.3.

nored, and within it is to be found the so-called "but for" rule, or, to use the well known Latin, the *sine qua non* test, as one mode of giving expression to the concept of proximate cause. The genesis of the expression, at least in its present form, can be traced at least to Shearman and Redfield on *Negligence*, §10. It was given currency by this Court in *Burrell Twp. v. Uncapher*, 117 Pa. 353, 363, 11 Atl. 619 (1887), where the test was quoted as follows: " 'If the defendant's negligence concurred with some other event (other than the plaintiff's fault) to produce the plaintiff's injury, so that it clearly appears that but for such negligence the injury would not have happened, and both circumstances are closely connected with the injury in the order of events, the defendant is responsible, even though his negligent act was not the nearest cause in the order of time.' " See also *Loughlin v. Pennsylvania R. Co.*, 240 Pa. 174, 87 Atl. 294 (1913); *Coyne v. Pitts. Railway Co.*, 393 Pa. 326, 336, 141 A. 2d 830 (1958); *Fehrs v. McKeesport*, 318 Pa. 279, 284, 178 Atl. 380 (1935); *Sciandra v. Shovlin*, 418 Pa. 378, 381, 211 A. 2d 437 (1965).

In seeking to determine whether specific conduct actually caused the harmful result in question, this test can be useful and is generally adequate, but it cannot be indiscriminately used as an unqualified measure of a defendant's liability. As it is stated in *Burrell Twp. v. Uncapher, supra,* the rule is the obverse of the Restatement formulation as found in §432(1): ". . . [T]he actor's negligent conduct is not a substantial factor in bringing about harm to another if the harm would have been sustained even if the actor had not been negligent." We think the Restatement formulation is preferable for three reasons: it speaks not just of defendant's "negligence", which is subject to varying definitions, but to his "negligent conduct," which denotes the physical act or omission involved as well as

the legal concept of negligence; it relates this negligent conduct to the element of substantiality in bringing about the result, which is a requisite of legal cause as stated in §431(a); and it says that substantiality is not present if the harm would have been sustained irrespective of the negligent conduct. In other words, it provides that if the harmful result would have come about even had the actor not been negligent, the negligent conduct, even though contributory, is not a substantial factor; hence no legal causation, and no liability.[5] The Pennsylvania "but for" formulation, on the other hand, says that there is liability if the harmful result would not have come about but for the negligent conduct. That is, if the conduct were the *causa sine qua non* of the result, there is responsibility, given close connection with the injury "in the order of events." The meaning of the qualifying phrase is not entirely clear, and a *causa sine qua non* does not necessarily result in liability.[6] As comment *a* to §431 of the Restatement says, "In order to be a legal cause of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent.

[5] Subsection 2 of Section 432, as noted below (see ftnt. 7 infra) states an exception to this rule.

[6] For example, A's negligence with respect to B does not necessarily entail liability for harm to C, even though such harm would not have come about without (i.e., but for) A's negligence, since injury to C may be beyond the scope of the risk foreseeable by A. See *Dahlstrom v. Shrum*, 368 Pa. 423, 84 A. 2d 289 (1951); *Brusis v. Henkels*, 376 Pa. 226, 102 A. 2d 146 (1954); *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928). Cf. Judge MAGRUDER's comment in *Marshall v. Nugent*, *supra*: "Back of the requirement that the defendant's culpable act must have been a proximate cause of the plaintiff's harm is no doubt the widespread conviction that it would be disproportionately burdensome to hold a culpable actor potentially liable for all the injurious consequences that may flow from his act, i.e., that would not have been inflicted 'but for' the occurrence of the act. This is especially so where the injurious consequence was the result of negligence merely."

Except as stated in §432(2),[7] this is necessary, but it is not in itself sufficient. The negligence must also be a substantial factor in bringing about the plaintiff's harm."

The Restatement approach to this subject is no stranger to Pennsylvania law. Sections 431 and 432 have been cited and relied upon many times by this Court.[8] Although the definition of legal cause in §431 differs in terminology from that found in the pre-Restatement Pennsylvania cases, it has been authoritatively stated not to differ in substance, as applied to specific factual situations. See Eldredge, Vol. II of Pennsylvania Annotations to the Restatement, §§431, 432 (1938). Without attributing infallibility to the Restatement,[9] we would think it better, in the interest of consistency and hopefully of clarity, to utilize its approach to the problem of legal causation.

Having said as much, we return to the charge in the case at bar. We note again that there were two defendants before the court, Whitner and Lojeski.

---

[7] This subsection deals with the situation where two forces are operating, one because of the actor's negligence, and each is sufficient to bring about harm to another. Here the actor's negligence may be found to be a substantial factor in bringing the harm about. See Illustration 3 to §432. The but for rule alone would not entail liability here.

[8] See, *inter alia, Majors v. Brodhead*, 416 Pa. 265, 271-72, 205 A. 2d 873 (1965); *DeAngelis v. Burns*, 404 Pa. 230, 235, 171 A. 2d 762 (1961); *Carter v. United Novelty and Premium Co.*, 389 Pa. 198, 204, 132 A. 2d 202 (1957); *Menarde. v. Phila. Trans. Co.*, 376 Pa. 497, 503, 103 A. 2d 681 (1954); *Carlson v. A. & P. Corrugated Box Corp.*, 364 Pa. 216, 222, 72 A. 2d 290 (1950); *Simon v. Hudson Coal Co.*, 350 Pa. 82, 85, 38 A. 2d 259 (1944); *Murphy v. Neely*, 319 Pa. 437, 179 Atl. 439 (1935). See also *Commonwealth v. Amecca*, 160 Pa. Superior Ct. 257, 261, 262, 50 A. 2d 725 (1947). Cf. *Rankin v. Carroll*, 149 Pa. Superior Ct. 158, 160, 27 A. 2d 487 (1942). See, also, the related *Restatement* sections, §435 et seq.

[9] See Keeton, *op. cit.*, pp. 36-41 and Harper and James, *op. cit.*, §20.6.

Whitner was thus a defendant in one of the consolidated cases and a plaintiff in the other. Thus whatever was said in the portion of the charge here under review applied equally to both defendants.

In each of the first three paragraphs quoted in footnote 1, *supra,* the court speaks of proximate cause as that act or conduct without which the injury would not have occurred. The "but for" mode of expression used in the third paragraph is but a variation of the rule as expressed in the two preceding paragraphs. While language such as that used can be found in the cases, the deficiency here is that, with one exception, there is nothing to qualify the *sine qua non* concept. The third paragraph, where the "but for" words are used, is devoid of the qualifying language in *Burrell Twp. v. Uncapher, supra,* and other cases, to the effect that "both circumstances" must be "closely connected with the injury in the order of events." Thus, the explanation of proximate cause as given in the charge before us is couched almost entirely in terms of cause-in-fact or physical cause, not proximate or legal cause. As indicated above, the two are not the same; legal cause frequently does not follow as far as cause-in-fact would lead.

The qualifying exception referred to above is the second sentence of the second paragraph of the three under discussion found in footnote 1, where the trial judge said, "Thus, *if the negligence complained of is not a substantial factor in bringing about the injury to the plaintiff it is not the proximate cause of the injury.*" Here is introduced the substantiality element of §431 of the Restatement, so important to the idea of legal cause. It would have been desirable to have repeated the indispensability of this element, or some equivalent qualification, in the third paragraph as well. This omission, however, we do not consider crucial in the total context of the charge. As indicated in foot-

note 1, the court did again at a later point equate proximate cause with a negligent act which "was a *substantial factor* in bringing about the accident." This was the last note struck on the proximate cause theme, and it was a true note.

Moreover, between the first and last mentions of proximate cause, the trial court reviewed the differing factual versions of the accident and the rules of the road as contained in The Vehicle Code, and was at pains to point out that Lojeski could be solely liable, if negligent, either because his negligence alone caused the accident or because it superseded that of Whitner; that Lojeski and Whitner could both be liable if their negligent acts combined as "contributing causes and proximate factors" in the happening of the accident, or that Whitner could be alone liable if he were found negligent. Despite the inadequacy of the treatment of proximate cause, as above indicated, we think that the charge on liability, taken as a whole, was fair and balanced, and that on the evidence before it the jury could not have been misled by the charge to Whitner's prejudice.

Appellant's second contention on appeal is that the court erred in its statement of the law as to superseding cause. This part of the charge was directed to the Whitner version of the accident, viz., that after he completed his U-turn and headed south on the highway a considerable distance ahead of the Lojeski automobile, he had slowed down and was driving partly on the berm and partly on the highway preparatory to stopping at his destination, the gun shop, when hit from the rear by Lojeski. The court stated that if the jury should find that Whitner was negligent in driving in this fashion, and also that Lojeski was negligent in running into Whitner, "Lojeski's negligence would supersede that of Whitner only if Lojeski were aware that Whitner was in a dangerous spot and was aware

of that in sufficient time to avoid the accident . . ." The court then charged that if Lojeski's failure to see Whitner's car in time to avoid it was due to inattention, "then both of their negligences would concur; in other words, Whitner would not be excused and neither would Lojeski."

Appellant states that this charge was too favorable to Lojeski; he reasons that if Lojeski *should* have been aware of Whitner's position in time to avoid the accident but through inattention or other negligence was not so aware, then the negligent driving which put Evans in peril was a superseding cause. Stated in other terms, appellant's position is that ordinary negligence on Lojeski's part should render him solely liable, and not merely severally liable because of concurring negligences. We disagree.

The rule in Pennsylvania as to when an actor whose negligence is a factual cause of a plaintiff's harm is relieved of liability due to a second actor's subsequent negligence has in general followed the approach of the Restatement. Section 447 of the Restatement (Second) provides that a subsequent negligent act (such as Lojeski's inattentive driving, accepting arguendo the Whitner account of the events here in question) will not relieve the original actor of liability if (among other things) it is "a normal consequence of a situation created by the actor's conduct, and the manner in which it is done is not extraordinarily negligent."[10] While the Pennsylvania cases have sometimes conditioned an intervening actor's sole liability on his awareness of the danger to be avoided at a time when avoidance was still possible, this is but another way of saying that negligence in the face of a known danger is extraordinary. That is, it is one thing for an interven-

---

[10] In all essentials, §447 of the Restatement (Second) follows the like section in the original Restatement of 1938.

ing actor to be unable to avoid a peril (as here, a collision)' because, through inattention, the danger was not observed in time; it is quite another to fail to exercise reasonable care and take proper action to avoid a collision after having become aware of the danger created by the original actor's negligence. In the first case, the intervenor's negligence may be called ordinary, and as to the first actor, a risk reasonably to have been foreseen; in the second case, negligence in the face of peril is properly denominated "extraordinary" and as in §447 excuses the original actor of liability for the harm brought about by the intervening negligence. This distinction was recognized by this Court, citing §447 of the Restatement; in *Kline v. Moyer*, 325 Pa. 357, 364, 191 Atl. 43 (1937), which the lower court was following in its charge in the present case, and in *Jeloszewski v. Sloan*, 375 Pa. 360, 366, 100 A. 2d 480 (1953). See also *St. John v. Kepler*, 360 Pa. 528, 61 A. 2d 875 (1948).

In *Hendricks v. Pyramid Motor Freight Corp.*, 328 Pa. 570, 574, 195 Atl. 907 (1938), the Court had before it the question of whether an intervening force was such as to constitute a superseding cause. The Court there said, "The answer to this inquiry depends on whether the Pyramid Company's driver's [i.e., the intervening] conduct was so extraordinary as not to have been reasonably foreseeable, or whether it was reasonably to be anticipated." (Citing *Kline v. Moyer, supra,* and Eldredge, "Culpable Intervention as Superseding Cause," 86 U. of Pa. L. Rev. 121 (1937)). See, also, *Roadman v. Bellone,* 379 Pa. 483, 492, 493, 108 A. 2d 754 (1954); *Skoda v. W. Penn Power Co.,* 411 Pa. 323, 330, 191 A. 2d 822 (1963); cf. *Klena v. Rutkowski,* 432 Pa. 509, 248 A. 2d 9 (1968).

While, as above indicated, the verbal formulation of the rule of superseding cause could have been different

from that chosen by the trial judge, his charge on the subject was neither inaccurate nor unfair.

The judgments of the court below are affirmed.

Mr. Justice COHEN, Mr. Justice EAGEN, Mr. Justice O'BRIEN, and Mr. Justice ROBERTS concur in the result.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.