## STATE of Delaware

v.

## James S. NEWTON, Defendant.

Superior Court of Delaware, New Castle County.

Submitted Aug. 13, 1980.
Decided Aug. 13, 1980.

Elizabeth B. Sandza, Deputy Atty. Gen., Wilmington, for the State.

James S. Newton, pro se.

LONGOBARDI, Judge.

The Defendant was arrested for speeding, that is, traveling 51 miles per hour in a 40 mile per hour zone. At trial, he moved to suppress the testimony relative to his speed that was based on a reading from a police radar unit called K–55. The K–55 radar unit is manufactured by M.P.H. Industries, Inc. and was the subject matter of a previous opinion by this Court in *State v. Harper*, Del.Super., 382 A.2d 263 (1978). The Defendant contends the *Harper* decision has no precedential value in this case because the former case dealt with the reliability of the K–55 unit in the stationary mode whereas this case involves its use in the moving mode.

In the presentation of a foundation for the admission of the results of the scientific device, the State presented evidence from Joseph Winkler. He is an employee of M.P.H. Industries, Inc. Mr. Winkler, in a voir dire type of examination to establish his expertise, disclosed an extensive and varied career in electronics technology. In particular, he has been employed by M.P.H. Industries, Inc. in various job categories, such as Director of Customer Services, repair, recertification of units and operator training. He has a Bachelor of Science Degree in electronic technology and he has the capability of making various electronic devices using the technology and components similar to that found in the K–55. He has appeared and been approved as an expert on the K–55 unit in other courts in other States. He frequently lectures on the K–55 unit and he can readily explain the radar theory, the electronic circuitry and the functions of each as utilized by the K–55.

Mr. Winkler explained that the K–55 is a scientific instrument designed to measure the speed of automobiles. The unit emits high frequency microwaves and is capable of receiving and measuring the reflected microwaves. In essence, it is a radar device utilizing the "Doppler Shift or Effect" to calculate the speed of the automobile from which the emitted high frequency microwaves are reflected. The "Doppler Shift or Effect" is the well known scientific principle that recognizes the change in frequency that occurs when microwaves are reflected from a moving object. If the moving object is approaching, the frequency of the reflected microwave increases and, if the object is receding, the frequency of the reflected microwave decreases. In utilizing a microwave of known frequency and then measuring the frequency in its changed or reflected state, one can, by utilizing a simple formula, calculate the speed of the approaching automobile. The K–55 emits two microwave signals. One is used to measure the speed of the patrol car from the micro-

wave emission directed to and reflected from the road. The other is used to measure the speed of the target vehicle. Through a circuitry comprised of components generally known, used and tested in the electronics industry, the unit interpolates the changed frequencies into a speed reading for both the patrol car and the target vehicle and presents them at the windows designated for each on the front panel of the K–55.

One of the refinements of the K–55 is designed to track and hold for speed verification the strongest frequency being reflected to it. The strongest signal will be that which is being reflected from the vehicle closest to the transmitter and the machine will lock onto that signal and consequently continually monitor the speed of that vehicle until it reaches a point approximately parallel with the front bumper of the patrol car. At that point, the target vehicle will have passed from the cigar-shaped field of microwave emissions and the machine will then lock onto the next vehicle emitting the strongest signal. Again, it will usually be the next closest vehicle to the transmitter. The Court uses the word "usually" because it is possible that a larger target rather than the one closest to the transmitter can be "locked" into the machine and tracked. An illustration of the phenomenon is the very small but first–in–line vehicle being followed closely by a very large truck. The larger truck could very well emit the strongest signal and consequently be the "target" vehicle rather than the first–in–line smaller automobile. This has absolutely nothing to do with a defective machine but is an anomaly of the "beast" which must be coped with by operating personnel who are trained in the use of the machine and are naturally forewarned about target vehicle identification under such circumstances. For instance, if the first vehicle in line passes beyond the field of microwave emissions and the locked signal continues to display a speed, it is obviously not the vehicle being tracked. Furthermore, the audio signal is another feature which can be utilized to check this situation. In all, the Court is satisfied that with trained opera-

tors, vehicle identification is practically fool proof and is an adequate safeguard against this problem and other eccentricities of the radar principle which could result in aberrational readings. In this respect, the K–55's readings are dependent upon the training and experience of its operator. But this is so with many scientific mechanisms. The value of these machines depends to a great extent on the man who operates them. This in no way should derogate the functional reliability of the machine. That is why there is no difference between the use of this machine's readings from a stationary mode or from a moving mode. The Doppler Shift or Effect theory is utilized in both instances; the internal circuitry is absolutely the same except that they perform different functions or calculations. Any attack on its use because it was used in the stationary mode or moving mode misses the point. In either case, the machine is a reliable scientific device utilizing state of the art electronic components performing functions within their design capabilities. The testimony has revealed and the Court is convinced that the K–55 is an effective and reliable scientific device that may be used to measure speed of motor vehicles whether the tracking car is in the stationary or moving mode.

The operator need not understand the scientific principles of radar or even the scientific operation of the K–55. So long as he is properly trained to operate, test and read the unit, his testimony may be based on its results. *State v. Harper, supra; State v. Dantonio*, N.J.Supr., 18 N.J. 570, 115 A.2d 35 (1955); *State v. Moffitt*, Del. Super., 100 A.2d 778 (1953); *State v. Tomanelli*, Conn.Supr., 153 Conn. 365, 216 A.2d 625 (1966).

As a further guidance, the proper foundation that must be laid before such testimony is allowed should include at least the following:

1. The officer must state his qualifications and training in the use of the K–55 radar unit;

2. The internal calibration and light tests were performed to check the operational integrity of the K–55 unit;

3. External tests were conducted to test the operational integrity of the K–55 which included the use of a certified tuning fork and some verification that the speedometer of the patrol vehicle using the K–55 was checked for accuracy;

4. The officer must be able to identify the car as the tracked vehicle.

Since all these requirements have been met in this case and the Court has determined the efficacy of the scientific device known as the K–55 to perform the functions for which it was designed, the motion to suppress is denied.

IT IS SO ORDERED.