## Henneman v. McBride

*James R. Humer*, for plaintiffs.
*George F. Douglas, Jr.*, for defendant.

Before Sheely, *P.J.*, Hoffer, *J.* and Bayley, *J.*

BAYLEY, *J.*, April 23, 1984—This trespass action claims damages for injuries resulting from an automobile accident in which plaintiffs' vehicle was struck in the rear by a car being operated by an unknown driver who had recently stolen it from defendant McBride. Plaintiffs complaint alleges the following:

1. On March 20, 1982, defendant Michael L. McBride, was the owner of a high performance 1976 Plymouth Fury Sedan.

2. At approximately 6:30 p.m., on that date, defendant parked his vehicle in an alley along the Cumberland Fire Company property at 121 East Louther Street, Carlisle, and left the vehicle unattended, unlocked, and with the keys in the ignition and the motor running.

3. When defendant exited the firehouse at approximately 6:35 p.m., he discovered that his automobile had been stolen.

4. At approximately 6:50 p.m., the same evening, James R. Henneman, accompanied by his wife Lorrie, was operating his vehicle out of a driveway and onto Route 34, a short distance from Carlisle.

5. After turning onto Route 34, the stolen vehicle approached plaintiffs from the rear and struck them. The stolen car failed to stop and subsequently was recovered at approximately 5:10 a.m. the following morning. The identity of the thief was never discovered.

Paragraph 17 of the complaint alleges the negligence of defendant-owner, Michael L. McBride, consisted of:

"(a) failing to realize that the ownership of a high performance vehicle such as the vehicle in question entails additional responsibility to keep said vehicle

secure and to prevent it from falling into the hands of irresponsible, careless, wreckless (sic), or feloniously minded persons; (b) leaving said high performance vehicle unlocked, unattended, with the keys in the ignition and the motor running at a place where it was easily stolen; (c) failing to realize that the accident rate for stolen vehicles is approximately 200 times the normal accident; (d) negligence per se—violation of the provisions" of 75 Pa. C.S. §3701.

Defendant has filed a preliminary objection to plaintiffs complaint in the form of a demurrer, claiming that the complaint does not set forth a valid cause of action under Pennsylvania law.

In Liney v. Chestnut Motors, Inc., 421 Pa. 26, 218 A.2d 336 (1966), the Supreme Court sustained the entry of a demurrer on the following stated facts:

"The defendant operates an automobile sales agency and garage. About ten o'clock a.m. on the day involved, a customer's automobile was delivered to the garage for repairs. The defendant's employees allowed the automobile to remain outside the building, double-parked in the street and with the key in the ignition. About three hours later, it was stolen by an adult stranger, who then drove it around the block in such a careless manner that it mounted a sidewalk, struck the plaintiff, a pedestrian thereon, causing her serious injury. Defendant's garage was located in a Philadelphia area experiencing a high and increasing number of automobile thefts in the immediate preceding months."

The Supreme Court commented that even asssuming that defendant's employees were negligent in permitting the automobile to remain outside on the street under the circumstances described, it was clear that the defendant could not have antici-

pated and foreseen that this carelessness of its employees would have resulted in the harm plaintiffs suffered. It further noted that even if defendant should have foreseen the likelihood of the theft of the automobile, nothing existed to put it on notice that the thief would be an incompetent or careless driver.

The court held that any negligence on part of defendant was only a remote cause upon which no action would lie. The lower court's demurrer was sustained because the remoteness of the causal connection between defendant's negligence and plaintiff's injury was sufficiently clear to remove the issue of causation from a jury as a matter of law.

Plaintiffs maintain that they have stated a cause of action pursuant to Anderson v. Bushong Pontiac Company, 404 Pa. 382, 171 A.2d 771 (1961). In Anderson, defendant was a used car dealer. On a Friday, a 14 year old boy stole the keys from a Pontiac Sedan. This boy, and other boys of like age had made a habit of playing in and about the cars in this used car lot. The used car dealer reported the theft of the keys to the police, but did nothing to remove the Pontiac from the lot, or make the car inoperable. On Sunday, just two days later, when the lot was unattended, another 14 year old boy came onto the lot and drove off in the Pontiac using the stolen keys. The thief was involved in an accident which seriously injured a pedestrian. The Supreme Court reversed a demurrer entered by the lower court, stating:

"Herein the defendant knew the keys of one of its cars located on an open lot had been stolen. Starting the motor by one who gained possession of the keys was a simple matter, even for a teenager. It also had every reason to know that children of immature years frequented this lot and used it for recreational

purposes at or about the time of the theft. Despite this knowledge, it saw fit to do nothing except report the theft to the police. The car was permitted to remain on an open and unattended lot. After the keys had been stolen and such fact was known, it did not require much imagination to realize that the car itself might well be next on the list. Without the car, the keys were insignificant. To prevent the car's theft and operation required only a very simple mechanical operation. That it might well fall into possession and control of an incompetent teenager was not difficult to visualize. But no safety precautions ensued. Whether or not this constituted the exercise of reasonable prudence, under all of the circumstances presented, cannot be decided as a matter of law."

In Liney, the Supreme Court distinguished Anderson by noting that the facts of Anderson "clearly put the defendant in that case on notice, not only that the automobile was likely to be stolen, but also that it was likely to be stolen and operated by an incompetent driver."[1] In the present case, plaintiffs' counsel acknowledged at oral argument that the facts were such that plaintiffs are unable, in good faith, to plead "specific notice" of any type.

Plaintiffs suggest that we adopt the reasoning of the Supreme Court of Michigan in Davis v. Thornton, 384 Mich. 138, 180 N.W.2d 11 (1970). Davis was a suit against an owner whose car, left with the key in the ignition, was stolen by joy riding minors and caused one death and five severely injured occupants of another car. The trial court granted summary judgment for the defendant. The Supreme Court of Michigan reversed, holding that

---

1. Justice Eagen, later Chief Justice, authored both opinions for the court.

defendant's liability was for the jury to determine, since reasonable men could conclude that leaving the keys in the ignition was not too remote a cause of plaintiff's injuries and that the joy riders intervening acts did not sever the causal connection. Plaintiffs further maintain that a violation of §3701 of the Pennsylvania Motor Vehicle Code forms a sufficient basis to submit this case to a jury under the Davis rationale. That section, referring to unattended motor vehicles, provides:

"(a) General rule—No person driving or in charge of a motor vehicle shall permit the vehicle to stand unattended without placing the gear shift lever in a position which under the circumstances impedes the movement of the vehicle, stopping the engine, locking the ignition in vehicles so equipped, *removing the key from the ignition* and, when standing upon any grade, turning the front wheels to the curb or side of the highway and effectively setting the brake." 75 Pa.C.S. §3701 (Emphasis added)

In DeNamie v. Brillhart, 224 Pa. Super. 241, 303 A.2d 506 (1973), the Superior Court held that there was a sufficient jury question on liability for violating this statute where defendant parked his car on a steep grade with its engine off and keys in the ignition and the conduct of a youthful passenger left in the automobile caused the vehicle to start up and move thereby resulting in injuries to plaintiff. The Superior Court held that "under the evidence in this case defendant's negligence in parking can be found to be not antecedent or remote negligence, but a continuing factor in causing plaintiff's injury."

The same reasoning cannot be applied to the present case because the Pennsylvania Supreme Court, in Liney, on almost identical facts, held as a matter of law that the remoteness of the causal connection between defendant's negligence and plain-

tiffs' injuries precluded recovery. The remoteness issue is not related to the source of the defendant's negligence; therefore, it is immaterial whether that negligence derives from the violation of a statute or the absence of ordinary care which a reasonably prudent person would exercise in these circumstances. In either case, causation must still be proven; any negligence must be a substantial factor in bringing about plaintiffs' injury. Whitner v. Lojeski, 437 Pa. 448, 263 A.2d 889 (1970).

However, in 1973, seven years after its Liney decision, the Pennsylvania Supreme Court expressly adopted section 447 of the Restatement (Second) of Torts in Estate of Flickinger v. Ritsky, 452 Pa. 69, 305 A.2d 40 (1973). This section formulates a test of when intervening negligence will relieve antecedent negligence. It provides:

"§447. *Negligence of Intervening Acts*
The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

In analyzing this section in his concurring opinion in Grainy v. Campbell, 493 Pa. 88, 425 A.2d 379

(1981), Justice Nix, now the Chief Justice, pertinently noted:

"The basic question is whether the first tortfeasor's action was in fact a legal cause of the resultant injury. If in fact it was, as is the case here, the fact that a second factor may also have contributed to the injury does not relieve the initial tortfeasor of responsibility. In determining whether an act of negligence is a legal cause, we have stated the test to be whether it is a substantial factor in bringing about this injury."

Justice Eagen, in the 1966 Liney case, did not analyze the causation issue in terms of section 447 of the restatement. Rather, his analysis was made only with reference to sections 448, 449 and 302B of the Restatement (Second) Torts. Section 447 also defines causation in terms of it being a "substantial factor" in bringing about the plaintiff's harm. This redefining language as to proximate causation was adopted by the Supreme Court in 1970, in Whitner v. Lojeski, supra. When the causation issue in the present case is analyzed under section 447, utilizing the substantial factor test, we feel that it should be submitted to a jury. We agree with the Supreme Court of Michigan in Davis, which held that section 447 was applicable, that reasonable men could conclude that McBride's leaving the keys in the ignition, with the motor running, was a substantial factor in bringing about the injuries of plaintiffs. The broader analysis of section 447 would allow a jury to conclude that McBride should have realized that a thief might steal his car when he left it with the key in the ignition and the motor running, and might be involved in an accident; or that a reasonable man would not regard a thief's stealing the car and being involved in an accident, under these circumstances, as highly extraordinary.

In this day and age there is hardly anything extraordinary about a thief stealing a car and being involved with it in an automobile accident. A jury might well conclude that common experience shows; a professional thief will get into a car and steal it even if it is locked. A joy riding thief will steal car on the spur of the moment by seizing opportunity when it strikes in the form of an unattended vehicle with its motor running. That type of thief, almost by definition, will operate the stolen vehicle in an incompetent manner. He steals, not for money, but for the thrill of the ride. That appears to be exactly what happened in this case. Less than one-half an hour after the car was stolen, the thief rear-ended plaintiffs' vehicle, never stopped, and then abandoned the car where it was found the following morning.

Under a section 447 analysis, a jury would only have to conclude that the theft and accident under these circumstances might occur or that these occurrences were not highly extraordinary. The language of section 449, relied upon in Liney, provided that the tortious act of the thief must be likely to result in an accident.[2] Whether something is "likely" to occur as contrasted to whether it "might" occur or is "highly extraordinary" when it occurs, are different standards.

Despite our analysis, the Liney case is on point factually with this case. Liney has not been reversed

---

2. Tortious or Criminal Acts the Probability of Which Makes Actor's Conduct Negligent.

If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.

nor has a rule of law upon which it was decided been abrogated. The Supreme Court may agree that this case should be submitted to a jury pursuant to section 447 which incorporates the substantial factor test into analyzing causation in terms of the negligence of intervening acts.[3] While we invite reversal, we are bound by the precedent of the Supreme Court of Pennsylvania and only they can decide whether the Liney "notice requirement" as stated therein, is irreconcilable with the refinement of the standard of causation as interpreted in their subsequent decisions.

## ORDER OF COURT

And now, this April 23, 1984, defendant's preliminary objection to plaintiffs' complaint, in the nature of a demurrer, is sustained. The complaint is dismissed.

---

3. In Grainy v. Campbell, supra, the Supreme Court reversed Kline v. Moyer, 325 Pa. 357 (1937), holding that section 447, adopted in Estate of Flickinger v. Ritsky, supra, was "irreconcilable" in analyzing when intervening negligence will relieve antecedent negligence involving facts in which a second negligent tortfeasor had become aware of the existence of a potential danger created by the negligence of an original tortfeasor.