## Weaver v. St. Christopher's Hospital for Children

504

*Leonard V. Fodera* and *Allison Long,* for plaintiff.
*John J. Snyder* and *Sima Zolghadri,* for defendants.

BERNSTEIN, *J.,* January 31, 2000—Plaintiff Luther E. Weaver, Esquire, as guardian ad litem of Darryl Bosket, a minor, filed this medical malpractice action against defendants St. Christopher's Hospital for Children, Stephen E. Dunn M.D. and Louis Marmon M.D. on September 29, 1993. Plaintiff alleges that defendants failed to adequately treat Darryl Bosket in July 1989. Darryl Bosket developed short bowel syndrome.

Trial began on May 18, 1998. To establish a prima facie case,[1] plaintiff presented the testimony of several

---

1. The proof required for a prima facie showing of negligence is that a duty was owed and breached, the breach was the cause of the injury, and damages resulted from the harm thus caused. See *Mitzelfelt*

experts who testified that defendants' negligent conduct directly caused minor plaintiff's short bowel syndrome. Plaintiff requested a jury charge both on direct causation[2] and the law of increased risk of harm.[3] The defendant objected to the latter charge and the court denied plaintiff's request for a charge pursuant to 10.03B. The jury was given a verdict form consisting of three special interrogatories. On May 26, 1998, a jury returned a verdict in favor of defendants. In answers to special interrogatories, the jury specifically found that defendant Dunn was negligent but also specifically found that his negligence was not a substantial factor in causing any harm. Accordingly, the issue posed herein is whether professional negligence which increases a risk further without causing any injury is itself directly actionable in Pennsylvania. The jury concluded that Dr. Louis Marmon was not negligent. As to Dr. Marmon, the verdict is not appealed. On June 4, 1998, plaintiff filed a motion for post-trial relief. The court denied plaintiff's post-verdict motions on June 2, 1999. From this order, plaintiff timely appealed.

The sole issue raised in post-verdict motions and on appeal is whether the court erred in failing to charge the jury on increased risk of harm. Plaintiff seeks entry of a verdict in his favor upon the jury verdict of negligence only. Plaintiff seeks a new trial limited to the question of damages only. Plaintiff claims that a jury should only decide the question of negligence and that it was revers-

v. Kamrin, 526 Pa. 54, 62, 585 A.2d 888, 891 (1990). As to the medical malpractice, the only difference is that the duty breached must be that imposed by the professional relationship.

2. Pa. S.S.J.I. (Civ.) 3.25, 10.03A.

3. Pa. S.S.J.I. (Civ.) 10.03B.

ible error to permit the jury to determine causation. Plaintiff claims that if an increased risk of harm is demonstrated, the jury may not be permitted to decide whether that increased risk was in actual fact the cause of any injury.[4]

Plaintiff's position is clearly wrong. If an action causes a specific result, then that action must necessarily have increased the risk of the result. The opposite, however, is not always true. It is not true that every time there is an increased risk of harm, harm results. Sometimes the increased risk does not result in the harm because no harm occurs. Sometimes the harm is inevitable. That's why the doctrine is called increased risk rather than direct causation. An "increased risk of harm" is inherent in every finding of legal cause but it cannot alone be the same as legal cause. The two legal concepts are complementary but do not match. The two concepts require distinct factual findings.

On July 2, 1989, 5-month-old Darryl Bosket presented to the emergency room at St. Christopher's Hospital for Children with an incarcerated hernia. Defendant Marmon, a pediatric surgeon, attempted to reduce the hernia in the emergency room but was unsuccessful. Between July 2 and July 5, 1989, minor plaintiff's condition worsened.[5] He experienced increased irritability, fever and swelling of the scrotum. On July 4, 1989, plaintiff's abdomen

---

4. Plaintiff contends that the proper jury questionnaire should be (1) was there negligence and if yes, (2) was there direct causation and if no (3) did the negligence which did not cause the harm increase the risk of harm? According to plaintiff, a "yes" answer to questions 1 and 3 should result in a plaintiff's verdict. (N.T. pp. 9, 27 on 5/20/99.)

5. N.T., 5/18/98 at 70.

became hard and distended.[6] On the morning of July 5, 1989, defendant Marmon suspected that plaintiff had suffered a bowel obstruction. That afternoon, defendants Dunn and Marmon performed surgery, which revealed a perforated bowel and peritonitis.[7] Between July 5 and July 30, 1989, plaintiff underwent several bowel resection procedures. As a result of the loss of bowel, plaintiff developed short bowel syndrome.[8]

At trial, plaintiff's liability expert, Dr. Eli Wayne M.D., testified that defendant Dunn's delay in not performing the surgery until July 5, 1989 caused minor plaintiff's injuries. On direct examination, he testified to a direct causal connection:

"Mr. Fodera: Doctor, can you tell this jury if there is a direct relationship between Darryl's short gut syndrome and the failure to adequately repair the hernia on July second and third?

"Dr. Wayne: Yes, I think so. Because if his hernia had been fixed on a timely basis, like either the night he came in or the next morning, the bowel wouldn't have been dead; and he would have gone home the same day. Just so you'll know, an operation for hernia is not a difficult operation. It's an operation that can be frequently done in 10 minutes; and the patients almost universally go home two or three hours after the operation. It's not a difficult thing to do; so you would anticipate a good result. So even if a hernia has been successfully reduced— that was thought to have been the case here—once you do the operation, the patients go right home. So the fail-

---

6. N.T., 5/21/98 at 113.
7. N.T., 5/18/98 at 42.
8. N.T., 5/18/98 at 15-17.

ure to do the operation here is what caused him to have all these problems.

"Mr. Fodera: Is that an opinion that you hold to a reasonable degree of medical certainty?

"Dr. Wayne: Yes, it is."[9]

Counsel for all parties properly submitted proposed points for charge. Plaintiff's counsel requested the court charge the jury on the doctrine of increased risk of harm.[10] Since plaintiff's expert opinion evidence directly related the delay in surgery to the injury, the court denied the request for a charge on increased risk. In accord with the standard jury charges numbers 3.25 and 10.03B, the court gave the following jury instruction on legal cause in a medical malpractice action.

"In order for the plaintiff to recover in this case, the defendants' negligent conduct must have been a substantial factor in bringing about harm. That's what the law recognizes as legal cause. A substantial factor is an actual, real factor, even if the results are unusual or unexpected; but it is not an imaginary or a fanciful factor, or a factor having no connection, or only an insignificant connection with the harm. Specifically, with respect to physicians, a defendant physician is legally responsible or liable for the injuries suffered by his patient if the defendant's negligent conduct is a legal cause of those injuries. In order for the negligent conduct to be a legal cause, that conduct must have been a substantial factor in bringing about the injuries in question. If the injuries in question would have been sustained even if the physician had not been negligent, then the negligent conduct

9. N.T., 5/21/98 at 48-49.
10. N.T., 5/22/98 at 10.

of the defendant physician would not be a substantial factor in causing the injuries." [11]

To establish a prima facie case of medical malpractice, the plaintiff must prove that (1) the defendant owed him a duty, (2) defendant breached that duty, (3) the breach was the proximate or legal cause of injury, and (4) plaintiff's damages resulted from that harm. [12] In any medical malpractice case: "[a] plaintiff is also required to present an expert witness who will testify, to a reasonable degree of medical certainty, that the acts of the physician deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered." [13]

A defendant's negligent conduct may not be found to be a substantial factor in causing the harm where the plaintiff's injury would have occurred without negligent conduct. [14]

The Supreme Court adopted an evidentiary principle which modified the harsh result of the normal prima facie requirement for cases where the defendant's conduct put beyond proof competent testimony about direct causation. The Supreme Court moderated the harsh result of the requirement that medical causation testimony be given "to a reasonable degree of medical certainty" in circumstances where the conduct of the defendants put such testimony beyond possibility. Thus, as an evidentiary matter, the Supreme Court relaxed the prima facie

---

11. N.T., 5/22/98 at 13-14.

12. *Mitzelfelt v. Kamrin,* 526 Pa. 54, 62, 584 A.2d 888, 891 (1990).

13. *Id.* at 62, 584 A.2d at 892 (citing *Brannan v. Lankenau Hospital,* 490 Pa. 588, 417 A.2d 196 (1980)).

14. *Hamil v. Bashline,* 481 Pa. 256, 264, 392 A.2d 1280, 1284 (1978).

standard and permitted a jury determination as to causation when testimony of direct causation is impossible but testimony is presented that the negligent conduct, "increased the risk" of the specific harm which in fact occurred. Pennsylvania has no cause of action for increasing a risk of harm. Pennsylvania relaxed the standard of proof to permit jury determination of legal cause in an increased risk of harm case.

Some states do in fact acknowledge a cause of action for "increased risk." Of these, some reduce the full compensation awarded to the chance of recovery taken away by negligence.[15] Other states permit full recovery only if a greater than 50 percent chance of recovery was lost.[16] This applies the plaintiff's "more likely than not" burden of proof to the increased risk concept. In those states, when a greater than 50 percent chance of medical recovery has been lost, full financial compensation is allowed. Pennsylvania does neither. Pennsylvania has never adopted "increased risk" as a cause of action. Pennsyl-

15. See *Delaney v. Cade,* 255 Kan. 199, 873 P.2d 175 (1994); *Mays v. United States,* 608 F. Supp. 1476 (1985); *DeBurkarte v. Louvar,* 393 N.W.2d 131 (1986); *Sanders v. Ghrist,* 421 N.W.2d 520 (1988); *McKellips v. Saint Francis Hospital Inc.,* 1987 OK 69, 741 P.2d 467 (1987).

16. See *Cooper v. Sisters of Charity of Cincinnati Inc.,* 27 Ohio St. 2d 242, 272 N.E.2d 97 (1971): "In an action for wrongful death, where medical malpractice is alleged as the proximate cause of death, and plaintiff's evidence indicates that a failure to diagnose the injury prevented the patient from an opportunity to be operated on, which failure eliminated any chance of the patient's survival, the issue of proximate cause can be submitted to a jury only if there is sufficient evidence showing that with proper diagnosis, treatment and surgery the patient probably would have survived." See also, *Gooding v. University Hospital Bldg. Inc.,* 445 So.2d 1015 (1984); *Hiser v. Randolph,* 126 Ariz. 608, 617 P.2d 774 (1980).

vania law only relaxes the plaintiff's burden of proof for a prima facie case where the fact of the malpractice makes testimony as to direct causation impossible.

In 1978, the Supreme Court in *Hamil v. Bashline*[17] relaxed the usual standard of proof required to establish a prima facie case of medical malpractice. In *Hamil,* the plaintiff brought a wrongful death and survival action, alleging that the defendants failed to adequately treat the decedent's myocardial infarction when he presented himself for treatment at an emergency room. The plaintiff's expert did not know and could not testify that the defendant's negligence in failing to employ recognized and available methods of treatment in fact terminated the decedent's chances for survival. The expert could not state to a reasonable degree of medical certainty that the plaintiff would have survived if proper medical care had been received. This is impossible to know. Heart attack victims die in emergency rooms even when excellent care is rendered. The expert opined only that if the decedent had received proper care, he would have had a 75 percent chance of survival.[18] The Pennsylvania Supreme Court did not then, and no court since, has adopted a new cause of action for "increasing the risk" of harm.

Finding this testimony sufficient to present the case for jury determination of fact, the Supreme Court adopted the doctrine of increased risk of harm enunciated in section 323(a) of the Restatement (Second) of Torts. The court stated:

"Once a plaintiff has introduced evidence that a defendant's negligent act or omission increased the risk

17. 481 Pa. 256, 392 A.2d 1280 (1978).
18. *Id.* at 263, 392 A.2d at 1284.

of harm to a person in plaintiff's position, and that the harm was in fact sustained, it becomes a question for the jury as to whether or not that increased risk was a substantial factor in producing the harm."[19]

While greatly liberalizing the proof requirement for a prima facie case, nothing in *Hamil* in any way affected long-standing substantial factor concepts first enunciated in *Whitner v. Lojeski.*[20] Even in an increased risk of harm case: "It is elementary that the liability of a defendant for injury or damages to another is predicated upon a connection between his negligent acts or omissions and the injuries sustained."[21] As discussed in *Hamil,* plaintiff must establish legal cause, some causal connection between defendant's conduct and plaintiff's injury.[22] The malpractice increased the risk of death. The plaintiff indeed died. The jury must yet decide whether death was due to increasing the risk because of malpractice, or would have occurred because of the inherent risk of death that is always present in the underlying medical condition. The jury is entitled to conclude that a causal connection had been established by evidence that the defendant's negligent failure to act increased the risk of plaintiff's harm.[23] The jury is also entitled to find that no causal connection was proven. Defendant's conduct cannot be a substantial factor where the jury concludes that plaintiff's injury would have resulted even if proper care had been rendered. Thus, the "increased risk of harm

---

19. *Id.* at 269, 392 A.2d at 1286.
20. 437 Pa. 448, 263 A.2d 889 (1970).
21. *Id.* at 454, 263 A.2d at 893.
22. *Hamil* at 265, 392 A.2d at 1284.
23. *Id.* at 265, 392 A.2d at 1284.

doctrine" is an evidentiary construct decreasing the standard of proof for a prima facie case, but not affecting either plaintiff's ultimate burden of proof or the elements of the cause of action. Plaintiff retains the traditional burden of convincing the fact-finder that the injury would not have resulted absent negligences, namely, that the increased risk was indeed actualized, causing the injury.

The increased risk doctrine applies only in cases "where no physician could testify to a reasonable degree of medical certainty that the harm was caused by malpractice." Nonetheless, the Supreme Court specifically stated: "where medical causation is a factor in a case coming within that section [323(a)], it is not necessary that the plaintiff introduce medical evidence—in addition to that already adduced to prove defendant's conduct increased the risk of harm—to establish that the negligence asserted resulted in plaintiff's injury. . . . In so saying we do not intend to undermine the well-established standard of 'reasonable degree of medical certainty' as the accepted norm for medical opinions on causation." [24]

Accordingly, the Supreme Court concluded in *Hamil* only that the expert's testimony "was sufficient to create a prima facie case of causation" and the trial court properly submitted the issue of negligence to the jury. [25]

In 1990, the Supreme Court clarified the meaning and scope of the increased risk doctrine in *Mitzelfelt v. Kamrin*. [26] In that case, a patient who suffered quadri-

---

24. *Id.* at 273, 392 A.2d at 1288.

25. *Id.* at 274, 392 A.2d at 1289.

26. 526 Pa. 54, 584 A.2d 888 (1990); see also, *Gradel v. Inouye,* 491 Pa. 534, 421 A.2d 920 (1981): "When applicable . . . section 323(a) relaxes the degree of certainty ordinarily required of a plaintiff's evidence to provide a basis upon which the jury may find causation."

paresis after undergoing a cervical laminectomy brought a medical malpractice action. The plaintiff's expert, Dr. Henry Shenkin M.D., testified that the 30-point drop in blood pressure experienced by the plaintiff during surgery was significant enough to compromise the blood pressure to his spinal cord and cause paraparesis. A plaintiff's verdict ensued. On post-verdict motions, the defendant claimed that it was entitled to a directed verdict because Dr. Shenkin did not and could not state to a reasonable degree of medical certainty that the plaintiff's injuries were actually caused by the defendant's negligence. The court found:

"[I]t would have been impossible for any physician to state with a reasonable degree of medical certainty that the negligence actually caused the condition from which Mrs. Mitzelfelt suffered. The most any physician could say was that he believed, to a reasonable degree of medical certainty that it *could have* caused the harm."[27]

Although Dr. Shenkin did not use the words "increased risk of harm," the court found that the substance of his testimony met the requirements of section 323(a).[28] Since no physician could possibly state with a reasonable degree of medical certainty that the defendant's negligent

27. *Id.* at 67, 584 A.2d at 894. (emphasis in original)

28. Pennsylvania law does not require experts to use "magic words" when expressing their opinions. *Mitzelfelt v. Kamrin,* 526 Pa. 54, 67, 584 A.2d 888, 894 (1990). See also, *Commonwealth of Pennsylvania v. Baez,* 554 Pa. 66, 101, 720 A.2d 711, 728 (1998) (holding the magic words "reasonable degree of medical certainty" unnecessary); *Smith v. Grab,* 705 A.2d 894, 900 (1997) (holding that an expert's failure to use the magic words "increased risk of harm" was not fatal); *Wilkes-Barre v. W.C.A.B.,* 54 Pa. Commw. 230, 420 A.2d 795 (1980) (holding that the magic words "work caused [plaintiff's] heart attack" unnecessary to establish causation in a workmen's compensation case).

acts actually caused the plaintiff's harm, the Supreme Court held that Dr. Shenkin's testimony was sufficient to establish a prima facie case of medical malpractice due to an increased risk of harm, and the jury finding of actualized injury because of negligently created increased risk was affirmed.

In this case, there is no basis to present a jury instruction on the doctrine of increased risk of harm. Plaintiff had no necessity and produced no evidence of increased risk at trial.[29] Unlike *Hamil* and *Mitzelfelt,* this is not a case in which it is impossible for any physician to testify to a reasonable degree of medical certainty that defendants' negligence "actually caused" plaintiff's harm. Plaintiff relied upon actual and direct causation testimony to establish a prima facie case. Plaintiff's own expert testified that defendant Dunn's delay in performing surgery *caused* plaintiff's injuries. Because this testimony, if believed, established direct causation against defendants, an increased risk charge was clearly not warranted.

---

29. While claiming in increased risk charge should be given, plaintiff's counsel conceded during the charging conference that this is a direct causation case. The following inquiry took place:

"The Court: . . . This is not an increased risk of harm case, as I understand it.

"Mr. Fodera: Yes, it is, your honor.

"The Court: It is?

"Mr. Fodera: Yes, it is. There's certainly testimony to that effect all over the place.

"The Court: What harm?

"Mr. Fodera: That's by Dr. Marchildon, the defense expert. And Dr. Wayne said that if the bowel was not perforated, then the delay in surgery caused the bowel to perforate. And Dr. Wayne went further and said it caused the bowel to compromise.

"The Court: In fact, *it did cause it,* didn't it?

"Mr. Fodera: That's correct." N.T., 5/22/98 at 10. (emphasis added)

516

Accordingly, plaintiff was not entitled to a jury charge on increased risk of harm in this case. If plaintiff's position was the law, an increased risk of harm charge would be required in every case, and legal cause could never be a jury question.

For the foregoing reasons, the court properly denied plaintiff's motion for post-trial relief for judgment n.o.v. and motion for new trial limited to damages. Its ruling should be affirmed.