**E.J. STEWART, INC.**

v.

**AITKEN PRODUCTS, INC. and Electro-Therm, Inc.**

**Marra DAVIS**

v.

**AITKEN PRODUCTS, INC. and Electro-Therm, Inc.**

**VICTOR C. SMITH, INC. and Sporkin Associates, Inc.**

v.

**AITKEN PRODUCTS, INC. and Electro-Therm, Inc.**

Civ. A. Nos. 81–3292, 81–4328 and 81–4742.

United States District Court, E.D.Pa.

Jan. 22, 1985.

A. Richard Bailey, Jeanne Wrobleski, Cozen, Begier & O'Connor, Philadelphia, Pa., for plaintiff in No. 81–3292.

L. Carter Anderson, Kevin F. Berry, Rawle & Henderson, Philadelphia, Pa., for defendants in all cases.

Peter Parashes, White & Williams, Philadelphia, Pa., for plaintiff in No. 81–4328.

James F. Proud, Media, Pa., for plaintiff in No. 81–4742.

## OPINION AND ORDER

VanARTSDALEN, District Judge.

### 1. BACKGROUND

These consolidated civil actions had their genesis in a fire at E.J. Stewart, Inc.'s (E.J. Stewart) leased premises on January 31, 1980. The fire apparently started in an area near a suspended electric radiant heater in E.J. Stewart's warehouse. E.J. Stew-

art, a video production company, brought suit in Civil Action 81–3292 against the manufacturers of the heating unit, Aitken Products, Inc. (Aitken) and the component heating element (or calrod), Electro-Therm, Inc. (Electro-Therm), to recover alleged property damage and business interruption losses caused by the fire. E.J. Stewart alleged that the radiant heating element, known as a Thermalink, arced or failed in a catastrophic manner, causing the fire.

The plaintiffs in Civil Actions 81–4328 and 81–4742, Marra Davis, Victor C. Smith, Inc. and Sporkin Associates, Inc., were the owner and two other tenants of the building, respectively. Pursuant to stipulation entered into by the parties, the plaintiffs in Civil Actions 81–4328 and 81–4742 agreed to be bound by a decision as to liability in Civil Action 81–3292. Therefore, Civil Action 81–3292, with E.J. Stewart as plaintiff, proceeded to trial alone.

Following a jury trial that commenced on February 28, 1984 and concluded on March 8, 1984, the jury returned answers to written interrogatories in favor of defendants as follows:

### SPECIAL INTERROGATORIES TO THE JURY

1. Do you find that the electric heater was the cause of the fire?  YES  X  NO ___

2. Do you find that the electric heater, at the time it was manufactured and sold by Aitken Products, Inc., was defective?  YES  X  NO ___

   (a) If 2 above is answered YES, was such defect a design defect?  YES ___ NO  X

   (1) If 2(a) is answered YES, was such a design defect a legal cause of the fire (*i.e.*, a substantial factor in bringing about the fire)?  YES ___ NO ___

   (b) If 2 is answered YES, was such defect a failure to provide adequate warnings?  YES  X  NO ___

   (1) If 2(b) is answered YES, was such failure to provide adequate warnings a legal cause of the fire (*i.e.*, a substantial factor in bringing about the fire)?  YES ___ NO  X

3. Do you find that the electric heating element (calrod) component part of the electric heater, at the time it was manufactured and sold by Electro Therm, Inc., was defective?  YES  X  NO ___

   (a) If 3 is answered YES, was such defect a design defect?  YES ___ NO  X

   (1) If 3(a) is answered YES, was such a design defect a legal cause of the fire (*i.e.*, a substantial factor in bringing about the fire)?  YES ___ NO ___

   (b) If 3 is answered YES, was such a defect a failure to provide adequate warnings  YES  X  NO ___

   (1) If 3(b) is answered YES, was such failure to provide adequate warnings a legal cause of the fire (*i.e.*, a substantial factor in bringing about the fire)?  YES ___ NO  X

4. Do you find that Aitken Products, Inc., was negligent, which negligence was a legal cause of the fire (*i.e.*, a substantial factor in bringing about the fire)?  YES  X  NO ___

5. Do you find that Electro Therm, Inc. was negligent, which negligence was a legal cause of the fire (*i.e.*, a substantial factor in bringing about the fire)?    YES  X  NO ___

6. Do you find that E.J. Stewart, Inc., was contributorily negligent, which negligence contributed causally to bringing about the fire?    YES  X  NO ___

7. What percentage of the total causal negligence of all parties found causally negligent do you find as to each party found causally negligent?

    (a) Aitken Products, Inc.             20%
        (Answer only if 4 is answered YES)

    (b) Electro Therm, Inc.            5%
        (Answer only if 5 is answered YES)

    (c) E.J. Stewart, Inc.             75%
        (Answer only if 6 is answered YES)

                  TOTAL       100%

NOTE: The total of 7(a), (b) and (c) must equal 100%.

8. Do you find that E.J. Stewart, Inc., with full knowledge of the risk involved, voluntarily assumed the risk of harm?    YES ___ NO  X

9. If you have answered YES to 3(a)(1), 3(b)(1) and/or 5, do you find that there was some act or failure to act on the part of Aitken Products, Inc., that constituted an intervening, superseding cause, relieving Electro Therm, Inc. from liability?    YES ___ NO  X

/s/
_____
Foreman/Forelady

---

Plaintiff timely filed an alternative motion for judgment notwithstanding the verdict or for a new trial on March 19, 1984. Plaintiff properly reserved the right to supplement its arguments upon receipt of the trial transcript. Due to the nature of certain of plaintiff's assignments of error, all parties concerned recognized the necessity of the trial transcript to disposition of plaintiff's motion. In order to avoid duplicative work, I informed defendants that their responses to plaintiff's motion need not be filed until after plaintiff supplemented its motion, following receipt of the trial transcript.[1]

---

**1.** The Federal Rules require that motions for judgment n.o.v. and for a new trial must be served within ten days after the entry of judgment. Fed.R.Civ.P. 50(b) and 59(b). The court is without power to hear motions filed out of time. 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2357 (1971) (Rule 50(b)); 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2812 (1973) (Rule 59(b)). The moving party, therefore, must timely serve and file its motion. There is, however, no Federal Rule that governs the time for a response. Likewise, there is no Local Rule directly governing time for a responsive *post*-trial brief. There is a Local Rule governing "Motion Practice" in general. E.D.Pa.R.Civ.P. 20. I assume that Local Rule 20(c) controls the timing of responsive post-trial briefs. Therefore, a response is due within ten days if the party was served by hand, an extra three days is provided if served by mail.

In cases such as this when there is no question that the trial transcript is necessary to resolve questions raised by the moving party's motion, it is my usual practice to allow the responding party to file its brief after the moving party has had opportunity to supplement its motion with the trial transcript. When the moving party requests leave to supplement, it is a waste of time to require the non-moving party to file two responses; once within the period prescribed in Local Rule 20(c) and again after the moving party has supplemented its motion. The better practice, when the moving party requests leave to supplement, is to require the non-moving party to file a single responsive brief following the moving party's filing of a supplemental brief.

Shortly after plaintiff ordered the trial transcript, the court reporter who had recorded the trial testimony was hospitalized with a serious ailment. Fortunately, the reporter recovered and recently completed transcribing the notes of testimony. Although I could have ruled on plaintiff's motion without the trial transcript, all parties and the court agreed to wait for the notes of testimony. Plaintiff's motion is now ripe for disposition.

## 2. MOTION FOR JUDGMENT N.O.V.

■■■■ The standard for granting a motion for a judgment n.o.v. is the same as that for a directed verdict. *Neville Chemical Company v. Union Carbide Corp.*, 422 F.2d 1205, 1210 n. 5 (3d Cir.1970), *cert. denied*, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970). The jury's verdict will be set aside only if manifest injustice will result if such verdict is allowed to stand. To grant such a motion the court must find as a matter of law that there can be but one reasonable conclusion as to the proper judgment. *Woodward & Dickerson, Inc. v. Yoo Hoo Beverage Co.*, 502 F.Supp. 395, 397 (E.D.Pa.1980), *aff'd mem.*, 661 F.2d 916 (3d Cir.1981). In ruling on plaintiff's motion I must view the evidence, and all inferences therefrom, in a light most favorable to defendants, the verdict winners. *Thomas v. E.J. Korvette Inc.*, 476 F.2d 471 (3d Cir.1973).

Plaintiff has advanced several contentions in support of its motion for judgment n.o.v. I will deal with each in turn.

Plaintiff's first contention is that, based upon the jury's answers to the special interrogatories, plaintiff is entitled to judgment in its favor. Plaintiff argues that: "To prevail on its 402A claim, Stewart needed only to prove that the heater and calrod were defective and they caused the fire." Plaintiff's Memorandum at 9 (citations omitted). Plaintiff contends that because "[the jury] found that the heater was the cause of the fire and that the heater and the calrod were defective" that "judgment should have been entered in favor of Stewart." *Id.* Plaintiff's statement as to what it needed to prove in order to prevail under section 402A is correct, as far as it goes. Plaintiff, however, does not go far enough.

The Pennsylvania Superior Court has opined that:

> The progress of the law in extending liability without fault to product suppliers should not be in disregard of fundamentals pertaining to the tort law of causation. In negligence cases there has been the modern admixture of foreseeability and causation to determine the existence of liability. If in a negligence case foreseeability and cause are to be examined to determine the scope of liability, it would seem that the same should be true in a case of unintentional conduct involving liability without fault.

*Oehler v. Davis*, 223 Pa.Super. 333, 334, 298 A.2d 895 (1972) (footnotes omitted). Thus, analysis of Pennsylvania negligence law on causation is required to determine what plaintiff need prove to establish causation under both section 402A's strict liability provisions and common law negligence.

■■■■ The Pennsylvania Supreme Court has admitted difficulty in defining exactly what constitutes the nexus between wrongful acts or omissions (be they negligent or subject to strict liability) and the injuries sustained.[2] Nevertheless, it is beyond dispute that under Pennsylvania law causation involves two separate and distinct concepts, cause in fact and legal (or proximate) cause. *See Whitner v. Lojeski*, 437 Pa. 448, 455–57, 263 A.2d 889 (1970). *See also*

---

**2.** The Court has stated that:
> One could wish that the pronouncement of this Court on the subject over the years had been somewhat more lucid, more consistent, more forthright; had distinguished between cause in a factual or "philosophic" sense and proximate or legal cause; had acknowledged

> that the concept, like that of negligence itself, was designed not only to permit recovery for a wrong, but to place such limits upon liability as are deemed socially or economically desirable from time to time.
> *Whitner v. Lojeski*, 437 Pa. 448, 455, 263 A.2d 889 (1970) (footnote omitted).

*Conti v. Ford Motor Co.*, 743 F.2d 195, 197 (3d Cir.1984).

▪ Cause in fact or "but for" causation provides that if the harmful result would not have come about but for the negligent conduct then there is a direct causal connection between the negligence and the injury.[3] In other words, the conduct is the causa sine qua non of the injury. The Pennsylvania Supreme Court, however, has recognized that a causa sine qua non does not necessarily result in liability. *Whitner*, 437 Pa. at 457, 263 A.2d 889. Quoting from the Restatement, the Court has explained:

> As comment *a* to § 431 of the Restatement says, 'In order to be a legal cause of another's harm, it is enough that the harm would not have occurred had the actor not been negligent. Except as stated in § 432(2), this is necessary, but it is not in itself sufficient. The negligence must also be a substantial factor in bringing about the plaintiff's harm.'

*Id.* at 457–58, 263 A.2d 889 (quoting Restatement (Second) of Torts § 431 comment a (1965)).

▪ Legal or proximate causation involves a determination that the nexus between the wrongful acts (or omissions) and the injury sustained is of such a nature that it is socially and economically desirable to hold the wrongdoer liable. It is a determination that must be made in addition to a determination of cause in fact or "but for" causation. If certain conduct is not the cause in fact of someone's injury it cannot be the legal or proximate cause. The converse, however, is not inevitably true. Something can be the cause in fact but not the legal or proximate cause of an injury. The articulated standard for determining legal or proximate cause is whether the alleged wrongful acts were a substantial factor in bringing about the plaintiff's harm. Restatement (Second) of Torts § 431 (1965); *Whitner*, 437 Pa. at 458, 263 A.2d 889 (adopting Restatement approach).

▪ Plaintiff's contention that it needed "only to prove that the heater and calrod were defective and they caused the fire" is correct; provided the Pennsylvania standards of causation developed in negligence law are included. Plaintiff's statement that, because "[the jury]" found that the heater was the cause of the fire and that the heater and the calrod were defective" judgment in its favor was required, is not correct. Causation involves both cause in fact and legal cause. *Conti*, 743 F.2d at 197. I therefore included two separate interrogatories pertaining to causation in the special interrogatories submitted to the jury. In light of the law of Pennsylvania on causation, it probably would have been error not to include separate questions on cause in fact and legal cause. The jury answered the cause in fact interrogatory in the affirmative and found that the heater *started* the fire. That alone does not establish a legal cause. Had the jury answered that first question in the negative, the case would have been over. Because the jury found cause in fact and a defect, it reached the interrogatories on legal cause (one on strict liability for each defendant). The jury answered those questions in the negative. Plaintiff's contention, that it is entitled to judgment based on the answers to the special interrogatories, is incorrect. Causation would only have been established if the jury had answered both the cause in fact and legal cause interrogatories in the affirmative. The jury did not do so.

▪ Plaintiff's second contention is that the jury's findings, as a matter of law, established that the defective condition of defendant's products was a legal (or proximate) cause of the plaintiff's damages. Based upon the Court of Appeals for the Third Circuit's analysis in *Conti v. Ford Motor Co.*, 743 F.2d 195 (3d Cir.1984), I disagree. While the facts of *Conti* and the case at bar are completely different, the

---

**3.** Certain early Pennsylvania cases used the cause in fact or "but for" test to establish liability. *See e.g., Burrell Township v. Uncapher,* 117 Pa. 353, 363, 11 A. 619 (1887). That early view has been discredited.

legal issues and application of law to fact are remarkably similar.

In *Conti* the plaintiffs, Richard and Patricia Conti, brought suit against Ford Motor Company (Ford) for personal injuries sustained by Mrs. Conti while attempting to enter their Ford car. Mr. Conti turned on the ignition of their standard transmission car, without depressing the clutch, causing the car to lurch backward while Mrs. Conti was attempting to enter the passenger side of the vehicle. The lurch of the vehicle caused Mrs. Conti to lose her balance and fall, causing her personal injuries.

Plaintiff's complaint alleged that Ford was strictly liable for defective design and failure to warn. The case at bar was likewise submitted to the jury on the strict liability theories of design defect and failure to warn (in addition to negligence).[4] Both in *Conti* and the case at bar the jury rejected the claim of defective design. In *Conti*, the jury found Ford liable on the failure-to-warn theory; in the present case the jury determined that the element and heater were defective by reason of the failure to warn, but found that such defect was not the legal cause of the plaintiff's harm. Further, the *Conti* jury found Mr. Conti 75% responsible for his wife's injuries on Ford's third-party negligence claim against him; in the present case the jury found E.J. Stewart 75% contributorily negligent on its negligence claim against defendants.

Ford appealed the jury's verdict of $650,-000 to Mrs. Conti and $15,000 to Mr. Conti. One of the issues raised by Ford on appeal was "whether the lack of an adequate warning was the proximate cause of Mrs. Conti's injuries." *Conti*, 743 F.2d at 197. In its judgment n.o.v. motion plaintiff has alleged that:

> Under the substantial factor test, to sustain the judgment, the Court would effectively have to hold that the evidence in this case was sufficient to support a finding that the *fire would have oc-*

*curred* even if defendant had provided adequate warnings or, more generally, even if the heater had not been defective.

Plaintiff's Memorandum at 11 (emphasis in original). It is abundantly clear that plaintiff has raised the same issue addressed by the court of appeals in *Conti*: was the lack of adequate warnings the proximate or legal cause of plaintiff's harm? In *Conti*, the court of appeals reversed the district court's submission of the issue to the jury because there was not sufficient evidence, as a matter of law, "to support a reasonable inference that the existence of additional warnings may have prevented the accident from occurring." 743 F.2d at 198. In the present motion plaintiff seeks to have this court overturn the jury's determination that the lack of adequate warnings was not a legal cause of plaintiff's harm.

Plaintiff, in support of its position, contends that:

> To find that the defect was not a substantial factor that caused the fire, the jury must have determined that the same fire would have occurred even with warnings or without any defect. It is incomprehensible and nonsensical to even suggest that this would have been the case. *No one testified that if there had been warnings, they would not have followed them.*

Plaintiff's Memorandum at 11 (emphasis in original).

The sentence underlined by plaintiff seeks to shift the burden to defendants to show that plaintiff would not have heeded proper warnings. The *Conti* court, however, clearly stated that it was part of plaintiff's case to establish the effect of any warning: "[L]iability may result only when there is sufficient evidence that additional warnings or reminders may have made a difference." *Conti*, 743 F.2d at 199 (citation omitted). It was part of plaintiff's case to establish that the lack of warnings "may have made a difference." Plaintiff simply did not so convince the jury.

---

**4.** Plaintiff's claim, that the failure to submit the issue of a manufacturing defect to the jury is grounds for a new trial, is addressed at pages 897–898 *infra*.

While there was no testimony that any warnings would have been ignored, there was also no direct testimony that they would have made a difference. There was sufficient evidence to support the inference that an adequate warning may have prevented the plaintiff's harm. I therefore submitted the issue to the jury. As there was no direct testimony either way, it was for the jury to decide, based upon all the circumstances presented. The jury concluded that the lack of warnings was not a substantial factor in bringing about the fire. Plaintiff's contention, that the jury's findings establish as a matter of law that defendants' defective products were a legal cause of plaintiff's harm, is incorrect. I will not, therefore, set aside the jury verdict.

■■■ Plaintiff's third contention is that contributory negligence is not a defense to strict liability as a matter of law. I understand plaintiff's contention to be that the only way the jury could have decided that the failure to warn was not the legal cause of the fire would have been for the jury to improperly have applied contributory negligence to the strict liability claim.

Anytime counsel decides to proceed at trial on multiple theories of liability there is a possibility that the jury may well become confused and apply aspects of one theory to the other theory or theories involved. That is especially true in tort law when a plaintiff proceeds at trial on the theories of strict liability, negligence and breach of warranty, or any multiple combination thereof.[5] Provided there is no error in the jury charge or inconsistent answers to in-terrogatories, the verdict should stand. There is absolutely no basis to conclude that the jury did not fully understand the issues, or that it failed to properly apply the law to the facts.

A review of my charge to the jury in its entirety reveals that there was no error committed in charging the jury on contributory negligence. I instructed the jury that the negligence and strict liability claims were "entirely separate and independent." Tr. of 3/8/84 at 28. Contributory negligence was included only in the charge on plaintiff's claim of negligence. *Id.* at 34–36, 45–46. Because the plaintiff chose to proceed on a negligence theory and there was evidence of contributory negligence, I was required to give an instruction on that issue. It was given only in the context of the negligence claim.

Likewise, the jury's answers to the written interrogatories were not inconsistent. Plaintiff's reasoning is as follows: because the jury found that the products were defective but such defects were not the legal cause of the fire, and the jury found plaintiff 75% contributorily negligent on the negligence claim, the jury must have improperly applied the 75% contributory negligence finding to the strict liability claims. There is no reason to so conclude. The jury's answers might theoretically be inconsistent if the only asserted negligence of plaintiff was failure to warn.[6] Neither plaintiff's theory nor its evidence ever limited defendants' alleged negligence to a failure to warn. My charge to the jury on negligence was not so limited. *Id.* at 31–32. Because there were other acts of the

---

5. I brought the inherent difficulties involved in charging a jury on multiple theories to counsel for plaintiff's attention several times, both on and off the record. *See e.g.* Tr. of 3/1/84 at 143. Plaintiff's counsel eventually agreed to withdraw the breach of warranty claim, Tr. of 3/5/84 at 194, but decided to go forward on its strict liability and negligence claims. Because plaintiff chose to go forward on its negligence claim, and there was evidence of contributory negligence, I was required to instruct the jury on that issue. Plaintiff is certainly entitled to go forward on any and all theories on which it presents sufficient evidence. When plaintiff chooses to do so it must accept the risks with the benefits. Absent error by the trial judge or inconsistent findings by the jury, a court cannot assume the jury was confused.

6. Had the plaintiff's claim of negligence been limited to failure to warn the jury's findings might be inconsistent. The finding that the product was defective by reason of a failure to warn but that such failure *was not* a legal cause of the fire, would be inconsistent with the finding that the defendants were negligent because of a failure to warn and such negligence *was* a legal cause of the fire.

defendants that the jury could have decided were negligent,[7] I cannot assume the jury's findings as to negligence were limited solely to a failure to warn. The jury's answers to the written interrogatories were consistent.

Because there was no error in the charge as to contributory negligence and the jury's answers to interrogatories were not inconsistent, at the most there could be no more than a "mere suspicion" that the jury confused the issues of contributory negligence, as it relates to negligence, and legal causation, as it relates to strict liability. *Cf. Mudrak v. Paxson Machine Co.*, No. 80–3909 (E.D.Pa. December 23, 1983), *aff'd*, 751 F.2d 376 (3d Cir.1984). I can not inquire into the purely internal workings of the jury's decision-making process on the mere possibility of confusion. *See Domeracki v. Humble Oil & Refining Co.*, 443 F.2d 1245, 1247 (3d Cir.), *cert. denied*, 404 U.S. 883, 92 S.Ct. 212, 30 L.Ed.2d 165 (1971); *Beron v. Kramer-Trenton*, 402 F.Supp. 1268, 1271 n. 5 (E.D.Pa.1975), *aff'd*, 538 F.2d 318 (3d Cir.1976).

Finally, it is unclear exactly what effect contributory negligence can have on legal causation. Defendants requested an instruction on comparative causation because the Pennsylvania Comparative Negligence Act refers to "causal negligence." I rejected such a charge. Nevertheless, it may have been proper for the jury to consider any contributory negligence of plaintiff in deciding the strict liability causation issue, if that is indeed what they did. *See e.g. Schneider v. American Gage & Manufacturing*, No. 80–4486 (E.D.Pa. August 9, 1984); *McCown v. International Harvester Co.*, 463 Pa. 13, 342 A.2d 381, 384 (1975) (Pomeroy, J., concurring).

For the reasons stated above, plaintiff's third contention in support of its motion for judgment n.o.v. will be rejected.

■ Plaintiff's final contention in support of its motion is that as a matter of law plaintiff was not contributorily negligent. Viewing the evidence in a light most favorable to defendants, with all reasonable inferences therefrom, I cannot say that there is only one reasonable conclusion as to plaintiff's contributory negligence. There were numerous instances in the testimony where plaintiff's employees' conduct may have been construed by the jury to be below that of reasonable persons. *See e.g.*, Tr. of 2/29/84 at 7–9; Tr. of 3/1/84 at 210–14; Tr. of 3/2/84 at 72–76; Tr. of 3/6/84 at 154–158.

Plaintiff appears to contend that because the jury determined that the heater was the cause in fact of the fire any conduct of the plaintiff, other than that relating to the failure-to-warn issue, is irrelevant. Evidence as to plaintiff's installation, maintenance and observation of the heater was relevant to plaintiff's possible contributory negligence, because the jury determined that the heater started the fire.[8] There were several instances of the conduct of plaintiff's employees regarding installation and maintenance of the heater that the jury could have determined were not that of reasonable persons. *See e.g.* Tr. of 3/1/84 at 56–58, 122, 232–34; Tr. of 3/2/84 at 26–30; Tr. of 3/6/84 at 70–72. The conduct of plaintiff's employees was such that the jury could and did decide that it contributed causally to the fire.

For the reasons stated above, I cannot conclude that there is but one reasonable conclusion as to the proper judgment. While the jury's verdict may have been

---

**7.** For example, the jury may well have decided that Aitken was negligent by reason of the testimony regarding the alleged phone call or phone calls to Aitken by an E.J. Stewart employee. Indeed, the plaintiff, in one of its pretrial briefs, asserted this as the primary negligence of Aitken. The jury may also have decided such conduct by Aitken was not so extraordinary as to be unforeseeable by Electro-Therm. The jury may also have decided that the conduct of plaintiff's employees on the whole was such that, despite the alleged phone call, plaintiff was 75% responsible for the fire.

**8.** Plaintiff is absolutely correct that evidence of conduct by plaintiff that would lead to an inference of some other cause in fact of the fire is irrelevant, e.g. testimony about smoking in the studio.

surprising to plaintiff, it is not manifestly unjust, in light of the evidence, to allow it to stand.

### 3. MOTION FOR A NEW TRIAL

A new trial must be granted if there was substantial error in the admission or exclusion of evidence or in the court's instructions, or the verdict was inadequate or excessive or against the weight of the evidence. *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147 (1940); *Marder v. Conwed Corp.*, 75 F.R.D. 48 (E.D.Pa.1977); 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2805 (1973). In other words, a district court may grant a new trial if required to prevent injustice or to correct a verdict that was against the weight of the evidence. *American Bearing Co. v. Litton Industries, Inc.*, 729 F.2d 943, 948 (3d Cir.1984), *cert. denied*, — U.S. ——, 105 S.Ct. 178, 83 L.Ed.2d 112 (1984); *Thomas v. E.J. Korvette, Inc.*, 476 F.2d 471, 474–75 (3d Cir.1973). The authority to grant a new trial resides in the sound discretion of the district court. *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 191, 66 L.Ed.2d 193 (1980) (per curiam).

Plaintiff has advanced a number of contentions in support of its motion for new trial, some of which overlap its contentions regarding the motion for judgment n.o.v. I will deal with plaintiff's contentions seriatim.

Plaintiff's first contention is that I erred in refusing to permit plaintiff to show the jury a videotape demonstrating the violent failure characteristics of the heater and the calrod manufactured by defendants. The circumstances surrounding the videotape and the reasons for its not being admitted at trial need to be set forth at length.

At a pretrial status conference in chambers on December 27, 1983, wherein all parties were represented by counsel, I questioned the parties about the possibility of settlement. The parties represented that such discussions had proved fruitless. After the defendants revealed that no formal demand had been made by the lead plaintiff, E.J. Stewart, I asked to speak to E.J. Stewart's counsel in private. During that discussion, which along with the entire conference was off the record, plaintiff's counsel revealed that they had a videotape of a catastrophic failure of a unit that was the same type as defendants' products at issue. *See* Tr. of 5/5/84 at 75. I asked counsel if such tape had been turned over in discovery. Counsel for plaintiff informed me that such material had not, as far as they were concerned, been requested in discovery. Further, it was their intention to introduce it as a rebuttal testimony, thus obviating the necessity of identifying it as an exhibit under Local Rule 21(c)(5). I specifically informed counsel that by not turning over the videotape in discovery they were running a severe risk. *See id.* Counsel assured me that they would once again review the interrogatories to be sure that defendants had not requested the videotape during discovery.

The next time the videotape was discussed was by plaintiff's counsel at a sidebar conference following the defendants' cross-examination of Mr. Gwin, one of plaintiff's fire investigation experts. Plaintiff stated that during redirect he intended to show a videotape of a test performed by Professor Kaczmarczik because certain testimony ellicited on cross-examination from Mr. Gwin by counsel for Aitken had "opened the door" on the issue.[9] Defendants, who were first made aware of the test and videotape at that point, vigorously objected to its being used because it had not been identified during discovery. After hearing the parties on the issue, out of the jury's presence, I ruled that plaintiff could

---

9. Plaintiff's contention at trial that defendants "opened the door" rings somewhat hollow. Defendants had no idea whatever that Professor Kaczmarczik had done any tests other than those disclosed in discovery. Thus, when Aitken's counsel asked Mr. Gwin a hypothetical question, to which Gwin replied that the opposite was true based upon tests he had seen performed by Professor Kaczmarczik, defendants had no idea they were opening any door. Rather, defendants blindly fell through the trap door plaintiff set for them. *See also* n. 11 *infra.*

not introduce it at that time. *Id.* at 76. I later refused to allow plaintiff to introduce the videotape as rebuttal evidence. Tr. of 3/7/84 at 10.

Plaintiff's contentions both at trial and in its motion for a new trial are that (1) one of the defendants' interrogatories requesting information about testing only refers to tests performed on items taken from the fire scene; (2) the plaintiff's experts formed their opinions without relying on the videotape; (3) the test was done to refute the report of one of defendant's experts; and (4) it was plaintiff's intention to offer the videotape as rebuttal evidence.

■ Plaintiff's first point is well taken. One of defendants' interrogatories that inquired about testing did refer to items "found on the fire premises." Because the videotape was a test performed on a heating unit not "found on the fire premises," there was no problem with plaintiff's failure to identify it in answer to that specific interrogatory. Plaintiff's other contentions, however, require further discussion.

Defendant Aitken's First Set of Interrogatories contained the following requests:

1. State the name and address of every individual whom plaintiff expects to call as an expert witness at trial, and, for each witness so identified, state separately:

. . . .

(c) The substance of the facts to which each such expert is expected to testify;

(d) The substance of the opinions to which each such expert is expected to testify;

(e) The grounds or summary of grounds for each such opinion;

(f) In detail, the factual information and *materials supplied to each such expert, including* all documents, reports or records furnished, all testimony, statements and reference material reviewed, *all physical evidence, objects, test results,* and special reports, photographs, plans *or other tangible things provided to each expert for review or inspection.*

. . . .

5. Set forth the name and address of each expert who supplied you with the opinions on which you base the allegations contained in paragraphs 7, 10, 12, 15, 17, 19 and 22 of plaintiff's Complaint and, with respect to each such expert, set forth the following:

. . . .

(f) The factual information and *materials on which such expert bases his opinion, including* all documents, reports or records furnished, all testimony, statements and reference material reviewed, *all physical evidence, objects, test results,* and special reports, photographs, plans *or other tangible things provided to each expert for review or inspection.*

Defendants' First Set of Interrogatories Directed to Plaintiff at 1, 2–3, 4 (emphasis added).

The preface to the interrogatories stated that the questions were "deemed continuing so as to require further answer from now until the time of trial, without further notice, if you learn information called for herein." *Id.* at 1. Further, the Federal Rules themselves provide that "[a] party is under a duty seasonably to supplement his responses with respect to any question directly addressed to ... the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony." Fed.R.Civ.P. 26(e)(1)(B).

I have no reason to challenge plaintiff's assertion that its experts did not rely on the videotape and the test performed therein to reach their *initial* opinions. Plaintiff's original answers to the first set of interrogatories were filed October 27, 1981. Both Prof. Kaczmarczik and Mr. Gwin were identified in answer to interrogatories 1 and 5. Plaintiff supplemented its answers on July 19, 1982 and again on June 14, 1983. In both instances Kaczmarczik and Gwin were again listed as expert wit-

nesses expected to testify at trial. Plaintiff's counsel represented at trial that the videotaped test in question was performed in July 1983. Tr. of 3/5/84 at 72. Therefore, the test was not performed until after the identified experts had formed some opinion as to the fire and its cause. That, however, is not dispositive. The Federal Rules and the interrogatories themselves required plaintiff to supplement its responses. Plaintiff did not do so.

When Prof. Kaczmarczik performed the test in July 1983 he already had an opinion that the heater caused the fire. He also had an opinion as to how it happened. Evidently, the test performed in July 1983, which was videotaped, confirmed his opinions. Although I did not view the tape, counsel represented that it depicted a similar unit to the one at issue failing in a violent manner with molten particles being expelled, striking a concrete floor, and radiating in an omnidirectional manner. It cannot be said that such a test would have no affect on Prof. Kaczmarczik's pre-existing opinions. At the very least, it confirmed, buttressed or strengthened his opinions, and was demonstrative evidence of them. I simply cannot believe that after the test had been performed, the subject matter and substance of the professor's testimony was not affected in some way. Although it may not have changed his testimony, that is not the requirement for the duty to supplement. The duty arises as to any "information thereafter acquired." *See* Fed.R. Civ.P. 26(e). Clearly, the test qualifies as after acquired information. Further, defendant Aitken's interrogatory number 1 asked for "the factual information and materials supplied to each such expert, including ... physical evidence, objects, test results ... or other tangible things provided to each expert for review or inspection." The professor's obtaining and testing of the similar heating unit certainly falls within the scope of this interrogatory (as well as interrogatory number 5). It was "material" provided to him for review. Likewise, showing the videotape, with the test results therein, to Mr. Gwin clearly falls within the scope of the interrogatories. The interrog-

atories themselves were in no way limited only to things relied upon by the experts to form their initial opinions.

It is my view that plaintiff unquestionably had a duty to supplement its answers and provide defendants with a copy of the videotape even if they did not intend to use it at trial. This result is reinforced by the elementary proposition that the purpose of discovery is to prevent trial by surprise. If I were to accept plaintiff's position, once an expert forms an opinion about a matter, any information thereafter acquired, by testing or otherwise, would not be discoverable because the expert did not rely on it to form his initial opinion. The party could sit back, waiting for the other side to raise the issue, and unleash the damaging evidence or testimony on his unsuspecting adversary during rebuttal. Such a situation would represent the epitome of trial by surprise that the modern rules of discovery were intended to eliminate. To accept plaintiff's position would turn expert witness discovery on its head.

■ Plaintiff's contentions, that the test was only performed to rebut one of the reports of defendants' experts and that plaintiff only intended to offer the videotape as rebuttal evidence, are also not persuasive. The reason why plaintiff's expert performed the test is irrelevant to the issue whether it should have been turned over in discovery. Either it was requested in the interrogatories and should have been turned over or it wasn't. I have determined that it was requested. As explained above, plaintiff had a duty to supplement its answers and should have produced the tape in discovery.

■ Plaintiff's contention that the tape was proper rebuttal evidence is also incorrect. At trial, plaintiff's counsel admitted there were three purposes for showing the tape: (1) to show that the aluminum reflector on the heater would melt long before an external heat source would cause the calrod (or element) to fail; (2) to show that when elements do fail they can fail in a catastrophic manner; and (3) to show the

probability that these catastrophic failures can cause fires. Tr. of 3/7/84 at 5. Arguably, the first purpose may have been a proper rebuttal argument because defendants contended that a fire caused by some other source could have caused the heater to fail.[10] Nevertheless, because it was *plaintiff's burden to prove that the heater caused the fire,* such a purpose is also fully consistent with proving plaintiff's case-in-chief. Further, the second and third purposes offered by counsel were only relevant to proving the elements of plaintiff's cause of action and had nothing to do with rebuttal. Plaintiff's burden under strict liability was to prove the products were defective, and to prove the cause-in-fact and proximate cause of the harm. *Conti,* 743 F.2d at 197. Plaintiff's contention throughout was that the heater failed catastrophically, causing a fire. That is exactly, as I understand it, what the test in the videotape depicts. These are also the very reasons plaintiff sought to show the videotape. The videotape, therefore, should have been part of plaintiff's case-in-chief.[11]

It was not error to exclude the proffered videotape from the evidence because it should have been produced during discovery and should have been listed as an exhibit in plaintiff's pretrial memorandum. *See Emerick v. U.S. Suzuki Motor Corp.,* 750 F.2d 19 (3d Cir.1984). Plaintiff's contentions, that its experts formed their opinions without relying on the videotape and that the tape was only intended to be offered as rebuttal evidence,[12] are not controlling. Because I warned counsel at a

pretrial conference, plaintiff consciously chose to take the very risk that ensued. Plaintiff, rather than taking the prudent route, chose to roll the dice by interpreting defendants' interrogatories as narrowly as possible. The discovery rules were not intended to make the exchange of pretrial information a game of chance.

Plaintiff's second contention in support of the new trial motion is that I erred in entering judgment for defendants based upon inconsistent and irreconcilable answers to the written interrogatories. Plaintiff advanced this same argument in its motion for judgment n.o.v. For the reasons heretofore set forth this contention will be rejected here as well.

Plaintiff's third and fourth assignments of error are related and can be addressed together. Plaintiff contends that I erred in submitting special interrogatories to the jury that were voluminous and confusing and that I erred in refusing to submit the interrogatories requested by plaintiff. The reason that these contentions can be considered together is that the proposed interrogatories eventually submitted by plaintiff were more voluminous than those actually submitted! *Compare* Docket Entry No. 143 *with* Docket Entry No. 149 (it appears as though questions 3 and 4 of plaintiff's interrogatories were redundant and without those plaintiff's would be slightly shorter).

The written special verdict interrogatories submitted to the jury contained nine numbered questions with several questions

---

**10.** Plaintiff's videotape, arguably, would have shown that the aluminum reflector would have melted before the external heat source would have caused the element to arc.

**11.** Plaintiff did offer the videotape prior to the redirect examination of Mr. Gwin, contending defendants had "opened the door." *See* p. 893 and n. 9 *supra.* I refused to allow the tape to be shown at that time. Because plaintiff technically offered the tape during his case-in-chief, the ground for refusing to admit it was not that it was improper rebuttal, rather, it was the failure to produce the videotape during discovery. The above discussion shows that plaintiff's insistence that the videotape was rebuttal evidence,

and therefore did not have to be listed as a trial exhibit, is incorrect.

**12.** The very fact that plaintiff did offer the videotape during its case-in-chief cuts against its contention that it only intended to offer the tape as rebuttal. Although plaintiff contended that defendants had "opened the door," I can not possibly see any merit to this contention. How could defendants have opened any door about the videotape when they didn't know it existed? As far as they knew all the materials Mr. Gwin had reviewed were listed in the interrogatory answers. Defendants had no reason to expect that he would refer to any materials other than those listed.

containing subparts. Depending upon how it answered the interrogatories, the jury could have answered anywhere from a single question to a maximum of sixteen "yes" or "no" questions, with an additional question apportioning causal negligence among the three parties.

██ The decision whether to submit a general verdict or a special verdict to the jury rests with the sound discretion of the trial court. *Moyer v. Aetna Life Insurance Co.,* 39 F.Supp. 725 (M.D.Pa.1941), *aff'd,* 126 F.2d 141 (3d Cir.1942). One court of appeals has gone so far as to say that the district court is entitled to "uncontrolled discretion." *Skidmore v. Baltimore & Ohio R.R. Co.,* 167 F.2d 54, 66–67 (2nd Cir.), *cert. denied,* 335 U.S. 816, 69 S.Ct. 34, 93 L.Ed. 371 (1948).

██ I decided to submit special interrogatories to the jury because, given plaintiff's alternative theories, the causation issues and the multiple defendants' cross claims, I recognized the serious problems that would arise in sustaining a general verdict. I notified counsel of my intentions well in advance so that they could submit proposed interrogatories of their own. Counsel did so. I limited the interrogatories to the essential issues to be decided and those necessary to sustain a verdict. Part of the reason the interrogatories were fairly lengthy was because plaintiff, as was its right, chose to proceed on alternative theories of liability.[13] The interrogatories, therefore, had to reflect those possibilities as well as certain claims by the defendants. The interrogatories were worded as plainly and simply as possible, while still serving their function. The interrogatories were neither so voluminous nor so confusing that a new trial is warranted.

██ It was not error to fail to give plaintiff's requested special interrogatories because those interrogatories are substantially the same as the ones submitted to the jury, except that plaintiff eliminated the questions as to contributory negligence and intervening superceding cause (it also appears that interrogatories 3 and 4 are duplicative). *See* docket entry No. 149. I have previously explained why the issue of contributory negligence was for the jury and will not repeat that explanation here. Superceding cause was relevant to the possible liability of Electro-Therm, Inc. The failure to submit plaintiff's suggested special interrogatories does not warrant granting a new trial.

██ Plaintiff's fifth contention is that the court erred in limiting the interrogatories to a design defect and lack of adequate warnings. There are several reasons why plaintiff's point is not persuasive.

First, as I explained to plaintiff following my charge to the jury, there was no testimony of record that a specific defect in the manufacturing process caused the heater to arc. Tr. of 3/8/84 at 47–48. There was testimony that all elements eventually fail, either quiescently or catastrophically. Because the elements must fail eventually, and some do so violently, plaintiff argued that the heaters should have been designed with a mechanism to prevent violent failures, i.e., a ground fault interrupter. There was no testimony that a manufacturing defect caused the element in question to fail violently rather than quietly. If there had been testimony that elements could have been designed so that they did not ever fail (quietly or violently), that the element in question failed violently would have raised an inference that it was due to a manufacturing defect. The testimony, however, was that all elements eventually fail. Thus, plaintiff was required to offer evidence as to some defect in manufacture that caused the element at issue to fail violently rather than quietly. The mere fact of a failure did not raise an inference

---

**13.** Plaintiff proceeded to trial on the theories of strict liability and negligence. In addition, plaintiff asserted alternative possibilities under both of its theories (e.g. design defect and failure to warn under strict liability). In order to insure that the special verdict rendered could be sustained, I submitted the issues separately as to each defendant, thus doubling those questions pertaining to the defendants.

that the element or heater was manufactured improperly.

Second, it was not error to fail to submit an interrogatory regarding a manufacturing defect because plaintiff never suggested I do so. *See* Plaintiff's Special Verdict (Docket Entry No. 149). Plaintiff did timely object to my failure to charge the jury on the issue of a possible manufacturing defect so that the issue as to the charge was preserved. Tr. of 3/8/84 at 47. Although I refused to specifically charge on that issue, I had already charged the jury generally that:

> [I]f you find that the product at the time it left the possession and control of either of the respective defendants, you find that it lacked any element necessary to make it safe for its intended use or contained any condition that made it unsafe for its intended use, then the product in the law would be defective, and such defendant or defendants would be liable for all harm that was caused by such defect.

Tr. of 3/8/84 at 24.[14] Following the jury's verdict on the special interrogatories, upon hearing argument from plaintiff, I instructed the jury that "it is conceivable that you may have found some other—based on your decision on a defect—on some other possible defect, and if you did, we want to be sure as to whether you have determined that that was—that such defect was or was not—a substantial factor in bringing about the fire." *Id.* at 79. The jury retired, returned and again answered in the negative as to any other defect.

Combining the general charge on "defect" with the supplemental oral charge reveals that any alleged error in failing to charge specifically about a manufacturing defect was harmless error, if any.

Plaintiff's sixth contention in support of its motion is that the court erroneously told the jury that the interrogatories were not confusing prior to sending them back to consider whether any defect was a substantial factor in bringing about the harm. Plaintiff also alleges that requesting the jury to determine proximate causation as to any defect, without recharging on certain other issues, was error. These points are not persuasive because by not raising them at trial plaintiff has waived them. The "necessity, extent and character of additional instructions is a matter within trial court's discretion." *Roberts v. Williams-McWilliams Co.,* 648 F.2d 255, 265 (5th Cir.1981). There was no need to re-charge on those issues because they were adequately explained in the original charge. Further, I could not find any reference in the transcript where I told the jury that the interrogatories were not confusing. When resubmitting the question of any defect to the jury, I did state that I thought the jury had already answered the question. Clearly, such a comment did not prejudice plaintiff.

Plaintiff's seventh contention is that the court erred in charging the jury on contributory negligence. Plaintiff made this same allegation in its motion for judgment n.o.v. For the reasons heretofore stated the contention regarding contributory negligence will be rejected here as well.

Plaintiff's eighth assignment of error is that the court improperly allowed William Hurlock to testify as to hearsay evidence. The testimony in question was given by one of plaintiff's employees, who had noticed a possible deformity in the element prior to the fire. The testimony involved Mr. Hurlock's knowledge of a "similar-type element" that had "failed" in an electric range. Tr. of 3/2/84 at 72. Part of the testimony involved statements of the witness's mother-in-law, who actually witnessed the element fail. Plaintiff objected to such statements as hearsay. I overruled plaintiff's objections and allowed the testimony.

■ " 'Hearsay' is a statement, other than one made by the declarant while testi-

---

**14.** After giving the general charge on defect I instructed that "in part" the plaintiff claimed there was a design defect and defect by reason of lack of adequate warnings. I never limited the jury to those theories alone.

fying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). The statements made by the witness's mother-in-law were not hearsay because they were not offered in evidence to prove the truth of the matter asserted. Simply put, the statements were not offered to prove that the element in Hurlock's mother-in-law's oven failed violently. The statements were offered to prove that Hurlock had some knowledge or information about heating elements similar to the one at issue. Whether the statements by his mother-in-law were true is not the issue. The issue is what was the extent of Hurlock's state of knowledge about heating elements. The statements were properly admitted for the limited purpose of showing Hurlock's state of mind and understanding on which he subsequently acted regarding the alleged deformity in the heater. *See Boston & Maine R.R. v. Aetna Casualty and Surety Co.*, 329 F.2d 602, 604 (1st Cir.1964).

Plaintiff's ninth contention is that the court erred in ruling that defendants could cross-examine witnesses on the issue of plaintiff's insurance. There was no error in such a ruling because the evidence was relevant to show possible bias. *See* Fed.R.Evid. 411. I ruled that defendants could ask a witness for the plaintiff who investigated the fire, to identify his employer, an insurance company. Defendants' counsel never raised the issue on cross examination. The only testimony involving insurance occurred when plaintiff's counsel asked one of plaintiff's witnesses who hired him to perform his investigation. Tr. of 3/2/84 at 231. Further, I specifically told plaintiff's counsel that he could introduce evidence that it would be to the insurance company's advantage to prove that the fire was arson. *Id.* at 260. There was no error committed that requires a new trial. The jury heard a single reference to "INA" during seven days of testimony. The reference was simply that INA had hired one of plaintiff's witnesses and it was brought out on direct examination, presumably because I had ruled that defendants could show this on cross-examination.

Plaintiff's final contention in support of its motion for a new trial is that the special verdict and judgment entered thereon is against the weight of the evidence and is contrary to law. It is plain from the discussion herein that the special verdict and judgment were proper in light of the evidence presented at trial.

Plaintiff's alternative motions for judgment n.o.v. or a new trial will be denied.